TEXAS LAND AND MORTGAGE COMPANY ET AL. v. KANSAS
BRIDGEMAN ET AL.

No. 39.

1. Limitation — Five Years Statute — How Pleaded by Warrantor.—A warrantor impleaded by the defendants may present the defense of limitations so as to protect his vendees, but when he relies upon their possession and not his own he should plead the statute in that form. A plea that he had been in possession five years is not sustained by proof that his vendees had such possession.

2. Same—Plea Must Allege, what.—It may be doubted whether a plea of the five years statute which nowhere contains an allegation that defendants claimed under a deed registered, or that they paid the taxes for the requisite time, would be sufficient to sustain a judgment based upon this statute, although no exception was made to it.

3. Proof of Heirship—Fact Case.—See proof of the heirship of one who fell at Goliad held sufficient, despite a discrepancy in spelling the family name; also other proof of heirship by affidavit and by recital in a deed, held insufficient.

APPEAL from Clay. Tried below before Hon. P. M. STINE.

*Coombes & Gano*, for appellants.—1. The deed from Jane, Sarah, and Alfred A. Bridgeman, under which defendants claimed, was more than thirty years old, and its recitals as to the heirship of the grantors were matters of pedigree, and evidence against even strangers to the deed. Chamblee v. Tarbox, 27 Texas, 140.

2. Actual, adverse, and exclusive appropriation of land is constituted by fencing, and by continued use of it as a pasture, without an actual residing on it. Cantagrel v. Von Lupin, 58 Texas, 570.

*A. K. Swan*, for appellees.—1. "Brigman," "Brigeman," and "Bridgeman" are idem sonans. Foster v. The State, 1 Texas Ct. App., 531; Goode v. The State, 2 Texas Ct. App., 520; Henry v. The State, 7 Texas Ct. App., 388; Baker v. McFarland, 77 Texas, 294.

2. The only evidence offered tending to show or intimating that appellants' vendees were the heirs of Geo. F. Bridgeman, was the recitals in their deed—a mere declaration in interest. 1 Greenl. Ev., 104.

HEAD, ASSOCIATE JUSTICE.—The land in controversy was patented to Geo. F. Bridgeman, April 8, 1876. The patentee was a member of W. J. Bullock's company, Second Georgia Battalion, and fell with Fannin at Goliad. Appellees claimed as the heirs of the patentee. Appellants claim under a deed purporting to have been made by Jane Bridgeman, Sarah Bridgeman, and Alfred A. Bridgeman, in the city of Philadelphia, on the 30th day of May, 1853, in which deed the grantors claim to be the heirs of the patentee. The court below, as we think upon sufficient

evidence, found that appellees were the true heirs, and rendered judgment in their favor.    Appellants also claimed by limitation, and the evidence to sustain this defense is as follows:

"It is agreed that upon the question of limitation the defendants proved, that they had a deed to the land in controversy duly registered for more than five years before the institution of this suit; that they redeemed the land from all taxes prior to the year 1883.    In 1883 the lands were rendered as their property and marked paid on the rolls, and they paid all taxes from 1884 to 1888, and about June, 1883, they constructed a post and wire fence around a pasture of about 40,000 acres of land, including the land in controversy, and occupied the said pasture for grazing cattle from that time until the institution of this suit, and claimed to own a part and have control of all the lands in controversy; and on this branch of the case defendants proved that there was a public road leading from Henrietta, the county seat, to Charley, in Clay County, which passes through said pasture for a distance of about 12 miles, which was at all times a public traveled county road; that said road was gated at its exit and entrance when said pasture was built, the latter of which was taken down about three years since and the former about two years, since which time said road has not been in any way obstructed; that there is no fence or other improvement than said tank on the land in controversy, and said road ran across one corner of it; that there was about thirteen sections of land in said pasture owned and controlled by parties other than defendants, several of which were never controlled by defendants; that other parties, not tenants of defendants, ranched in said pasture during said time, and one Jordan had at all times about 400 head of cattle grazing therein; that defendants were in litigation with said Jordan about three years, trying to eject his cattle from said pasture, and failed to do so; that Jordan had most of the time about 1000 acres in said pasture, over which defendants had no control; that during the year 1887 one Tobin, Pratt, and Lippincott each had lands leased from others, which they had for grazing purposes, and was a part of the above thirteen sections."

The court below rendered judgment in favor of appellees for the land in controversy, from which this appeal is taken.

Appellant calls in question the sufficiency of the evidence to sustain the finding of the court below that appellees were the heirs of the patentee of this land.    The evidence upon this point was:

First.    The deposition of Caroline E. Smith, who testified, that her residence is in Heard County, Georgia; that she is 58 years of age; that her first husband was Robinson Brigman; that she first became acquainted with the Brigman family in the year 1852; that she had heard her first husband and his mother, Temperance Brigman, say that said Robinson

Brigman had a brother whose name was George F. Brigman; that said George F. Brigman was killed in Texas in the year 1836 in the war between Texas and Mexico; that she had always heard the mother of her said husband, Robinson Brigman, say that George F. Brigman was killed in the war between Texas and Mexico, in the year 1836; that such was the family tradition;   *   *   *   that she never knew George F. Brigman personally; never saw his name written; never saw or had any family record; never heard George F. Brigman's name spelled or saw it written, and could not write his name; that she can not write; that she can not give an exact copy of the initials or of the spelling of his name; that George F. Brigman was never married.

Second.   The deposition of Kansas Jones (formerly Brigman), J. H. Brigman, and Mary Knoff, all of whom testified, that their father, Robinson Brigman, had a brother George F. Brigman, who died unmarried, and that they knew this from family reputation, and that they all reside in Heard County, Georgia.

Third.   One W. T. Wood also testified for plaintiff, by deposition, that he was 62 years of age; that he resides at Franklin, in Heard County, Georgia, and is well acquainted with the plaintiffs and has known them for twenty-five or thirty years, and has had business transactions with them; that he is judge of the Court of Ordinary; that plaintiffs are ignorant and illiterate; that they can neither read nor write; that their name is called Bridgman and Brigman; that they are known by both names; that the said Bridgman and Brigman family have a family tradition that George F. Brigman, the brother of plaintiffs' father, was killed in the war between Texas and Mexico, in the year 1836, and that plaintiffs as his heirs claim to own land in Texas; that he has heard this for many years.

Fourth.   A part of the muster roll of Captain W. J. Bullock's company, Second Georgia Battalion, First Regiment, was read in evidence, showing the name of G. F. Bridgeman as one of the privates therein, and a certificate from the Commissioner of the General Land Office, showing that no other name similar to Bridgman or Brigman appeared upon any of the muster rolls of those engaged in the war between Texas and Mexico.

The defendants read in evidence the deed under which they claim, set forth in the conclusions of fact, and an affidavit purporting to have been made by Samuel Nelson and A. F. Smith, at the time of the execution of said deed, showing that the parties making that deed were the heirs of George F. Bridgeman, who fell with Fannin at Goliad; but no attempt was made to trace any of the parties to this deed or affidavit, and the earliest evidence we have as to the existence of such deed, other than its date, is the fact that it was recorded in Bosque County in October, 1872, and was delivered to Dunlap by his vendor, Brock, in January, 1873.

No objection was made on the trial below to any of the evidence set forth above. The evidence was full that the appellees were the heirs of the George F. Brigman referred to in the depositions introduced by them.

If the heirship of plaintiffs depended entirely upon the similarity of the name Brigman with that of Bridgeman, to whom the land was patented, we do not think the judgment of the court below could be sustained; but when we add to this the facts, that the plaintiffs in this case are ignorant, illiterate people; that their name is sometimes called Brigman and sometimes Bridgman; that they live in the State from which the patentee seems to have come; that they had an uncle whose given name was George F., the same as that of the patentee; that there has always existed in their family a tradition that this uncle was killed in 1836 in Texas, in the war between Texas and Mexico; that they have for years claimed to own land in Texas as his heirs; that no other person of a name at all similar was engaged in this war; we are not prepared to say that the finding of the court was not correct. Baker v. McFarland, 77 Texas, 294; Leland v. Eckert, 81 Texas, 226.

The Texas Land and Mortgage Company, Limited, was made a defendant in the court below, and filed its answer, pleading not guilty, and vouching in its remote warrantor, W. J. Kellar, who appeared and undertook the defense of the case.

Kellar pleaded not guilty and the statutes of limitation of three, five, and ten years, his plea of the five years statute being as follows: "And for further plea in this behalf the said defendant says that said plaintiffs ought not to have or maintain their aforesaid action thereof against him, because, he says, he has had and held peaceable, continuous, uninterrupted, and exclusive adverse possession under title (or color of title) from and under the State of Texas of the lands and tenements claimed in said plaintiffs' petition, for more than five years next before the commencement of this suit, and this he is ready to verify," etc.

The deed made by this defendant, under which the original defendants claim, was dated January 30, 1883, and from the foregoing conclusions of fact it will be seen that the first possession claimed by defendant was that of Butler Brothers, who commenced to fence the pasture in June, 1883, evidently claiming under this deed. We are therefore of the opinion that the allegation in this plea that Kellar had had possession for five years, or in fact had ever had possession of this land, is not sustained by the evidence, and for this reason the court below did not err in finding in favor of plaintiffs on the question of limitation.

In Cunningham v. Frantdzen, 26 Texas, 39, it is said: "The manner of pleading the statute of limitations shows that the defendants relied on their own possession as connected with that of Hays, and not upon that of Hays for three years, disconnected from their own. The charges of the court are shaped with reference to that construction of the plea, and

so the verdict of the jury embraces it in its general finding for the defendants. Therefore, although the evidence may show that Hays had possession for three years, under color of title at sometime, though not immediately before suit brought, and although that should be held to extinguish Cunningham's title and confer title on Hays, still that issue not being made by the pleadings and found by the verdict, the judgment can not be sustained for defendants on that ground. A defense of the statute of limitations is required to be specially pleaded; and therefore, if defendants had relied upon title in Hays by his three years possession, under color of title, disconnected from their own possession, they should have pleaded it in that form, so as to have given notice of it."

It is not to be questioned that it was the duty of Kellar as warrantor to present the defense of the statute of limitations so as to protect his vendees (Brown v. Hearon, 66 Texas, 63); but we are of opinion that when he relies upon their possession, and not upon his own, he should plead the statute in that form, so as to apprise his opponents of what they are called upon to meet; and that an allegation that he, Kellar, had been in possession five years is not sustained by proof that his vendees had such possession. It will also be noticed that this plea of the five years statute nowhere contains an allegation that 'defendants claimed under a deed duly registered, or that they had paid taxes for the requisite time, and it may also be doubted whether on account of that omission the plea would be sufficient to sustain a judgment based upon this statute, although no exception was made to it (Blackwell v. Patton, 23 Texas, 670; Portis v. Hill, 3 Texas, 280), but we do not express any opinion as to this.

For the reasons above indicated, it will not be necessary for us to consider the sufficiency of the evidence as set forth in the conclusions of fact, to establish the adverse possession and payment of taxes necessary to sustain the defense under the five years statute. Facts somewhat similar are considered in the cases of Taliaferro v. Butler, 77 Texas, 578, and Church v. Waggoner, 78 Texas, 200.

It will be noted that this judgment was rendered previous to our recent legislation on the subject of limitation as applicable to land embraced in large pastures.

It is not pretended that the evidence shows any defense in favor of appellants under the three and ten years statutes.

Upon the whole case, we are of opinion that the judgment of the court below should be in all things affirmed, and it is so ordered.

*Affirmed.*