## T. S. HATTON v. BODAN LUMBER COMPANY.

Decided November 11, 1909.

**1.—Vendor and Purchaser—Lien—Payment—Subrogation—Legal Title.**

One who furnished money to a purchaser of land to discharge notes secured by a vendor's lien retained in the deed by a former vendor and of which such purchaser had assumed the payment, under an agreement with the latter subrogating him as security for the money so furnished to the lien securing the notes so discharged, acquired a lien only, and not the superior legal title. He could not rescind the former sale for nonpayment, but was compelled to resort to foreclosure of his lien, to which action a subsequent purchaser of the land was a necessary party; and hence could not recover in an action of trespass to try title, the land and the timber growing therein from one who had purchased such growing timber from the holder of the title of the original vendee. The latter was entitled to recover the timber and damages for the issuance, in such action, of an injunction restraining him from removing it.

**2.—Same—Case Stated.**

A. sold land to B., reserving in his deed a lien to secure notes given for the purchase money. B. sold to C., who assumed the payment of such purchase money notes. C. conveyed the growing timber on the land to D. and afterwards sold the land itself to E., who in turn assumed the notes, and who furnished the money with which C. paid them off. Held, that E., if entitled to subrogation to the lien of the notes by arrangement with C., did not thereby become the legal owner of the timber as against D., nor entitled to recover it from him, together with the land, in an action of trespass to try title.

**3.—Lien—Payment—Subrogation.**

Where notes for purchase money of land were paid by a subsequent purchaser, who had assumed them, with money advanced for the purpose by another, the lien is discharged, in the absence of an agreement between them that it shall be kept alive for the protection of the person so advancing the money, and he be subrogated thereto.

**4.—Findings of Court—Presumption.**

Facts supported by evidence, and not inconsistent with the facts found, will be presumed in support of the judgment rendered.

**5.—Deed—Failure of Consideration.**

Failure of consideration for the conveyance of an interest in land does not

make the conveyance ipso facto void; it merely entitled the grantee to rescind, and is not available to others to defeat the title.

### 6.—Minor—Deed—Disaffirmance.

The deed of a minor is voidable only, subject to repudiation within a reasonable time after attaining majority, and then only on returning the consideration, if still in the minor's possession.

### 7.—Same.

Evidence of probate proceedings and conveyances considered and held to show an intention to ratify rather than to repudiate a conveyance of land by minors.

### 8.—Tenants in Common.

One owning an insterest in growing timber only as tenant in common thereof with the owner of the land, had a right to cut and remove the timber to the extent of his interest.

Appeal from the District Court of Cherokee County. Tried below before James P. Gibson, Esq., Special Judge.

*Donley & Guinn,* for appellant.—Where land is sold on credit, and the vendor's lien retained in the deed and notes, the legal title remains in the party selling said land and holding said notes until the notes are fully paid. 2 Sayles' Real Estate, 568, art. 893; Ransom v. Brown, 63 Texas, 188; Slaughter v. Owen, 60 Texas, 668; Tom v. Wollhoefer, 61 Texas, 277.

A party buying land on credit, with vendor's lien retained in the notes executed by him and in the deed under which he claims the land, only owns or holds an equity or equitable title to the land until the notes or purchase money is paid by him, and such party could convey an equity in the land or timber only if he should sell before the notes were paid by him. 2 Sayles' Real Estate Laws, 629, 631.

A party furnishing money to pay off a vendor's lien on land at the request of the party who is to pay the notes, and with an understanding between the parties that the party so furnishing the money shall be subrogated to all the rights of the original owners and holders of the vendor's lien notes, and the money so acquired is paid to discharge the original debt, the party so furnishing the money is subrogated to and stands in the same relation to the vendee or party who is to pay said notes as the original vendor would stand if said debt had not been paid, and said party so paying or furnishing the money to pay would have superior title to the land that he furnished money to discharge the lien on or against. 2 Sayles' Real Estate Laws of Texas, 572, art. 896 et al.; Hicks v. Morris, 57 Texas, 658; Dillion v. Kaufman, 58 Texas, 676; Joiner v. Perkins, 59 Texas, 300; Wahrmund v. Merritt, 60 Texas, 24; Kallman v. Ludenacker, 9 Texas Civ. App., 182; Eylar v. Eylar, 60 Texas, 315; Pridgin v. Warn, 79 Texas, 588; Oury v. Saunders, 77 Texas, 278; Crafts v. Daugherty, 69 Texas, 477; Cattle Co. v. Boon, 73 Texas, 549; Pierce v. Moreman, 84 Texas, 596, 600; Thompson v. Robinson, 93 Texas, 165; Gardener v. Griffith, 93 Texas, 355; White v. Cole, 87 Texas, 500; Davis v. Hertman, 19 Texas Civ. App., 442; Jackson v. Bradshaw, 24 Texas Civ. App., 30; Anderson v. Silliman, 92 Texas, 560; Morgan v. Wheeler, 26 S. W., 297; Pitman v. Iseltt, 52 S. W., 96; Bruhl v. Maas, 54 Texas, 464; Morris v. Gaines,

82 Texas, 255; Monroe Bros. v. Buchanan, 27 Texas, 242; Dilley v. Freedman, 25 Texas Civ. App., 39; Benson v. Panther, 17 Texas Civ. App., 464; Brightman v. Fry, 17 Texas Civ. App., 531; Pickett v. Jackson, 42 S. W., 568; Houghton v. Rogan, 17 Texas Civ. App., 285.

Vendee, nor subsequent vendee, claiming under a vendee who purchased land and gave vendor's lien notes for the payment of same, can not maintain a claim against the vendor or those claiming under the vendor in a suit for the title and possession of the land or timber, unless said vendee or subsequent vendee offers to make payment of the amount due on the purchase money; such payment would have to be made at the time the opportunity was offered, or when suit was instituted against the vendee or subsequent vendee by proper pleading and tender of the money in court, if not before suit was filed. 2 Sayles' Real Estate Laws of Texas, 634, art. 949; Foster v. Powers, 64 Texas, 247; Ufford v. Wells, 52 Texas, 612; Robinson v. Black, 56 Texas, 215; Thompson v. Robinson, 93 Texas, 165.

The vendee in a sale of land, where the vendor's lien is expressly reserved in the deed and notes, can convey the land to the vendor or one who stands in the vendor's stead, in payment and cancellation of the vendor's lien notes, although the vendee, after acquiring the equity in the land, may have sold a part of or all of the land, or sold the timber off of the land; and where the subsequent vendee was given an opportunity to pay the debt and refused to do so before such conveyance is made, such subsequent vendee is forever concluded by the conveyance from the original vendee, which passes all the title such vendee had, just the same as if a judgment had been had and a foreclosure of the vendor's lien and order of sale issued and land sold to pay such debt; and the only remedy a subsequent vendee of the original vendee would have, at most, is, when sued for the land or timber by the purchaser from the original vendee, to offer by proper pleadings and tender to pay the original debt, together with interest, and all proper costs. 2 Sayles' Real Estate Laws, 575, arts. 894, 895, 898; Thompson v. Robinson, 93 Texas, 165; Foster v. Powers, 64 Texas, 247.

A conveyance of land or timber by warranty deed, being made in consideration of exchange of other land or timber with title to same by warranty deed, should the title conveyed in exchange fail, the contracts being contemporaneous, the other will fail, if so desired by the other parties to said contract, and the parties will all be placed back just as they were before the original contract of conveyance was made. Moody v. Paschall, 60 Texas, 483; Horne v. Chatham, 64 Texas, 16; Wallis v. Beauchamp, 15 Texas, 303; Pugh v. Mays, 60 Texas, 191; White v. Street, 61 Texas, 177; 2 Sayles' Real Estate Law, 502, 503, arts. 858, 862, 863.

If Davidson paid the debt of Acrey with Acrey's consent, and there was a lien on land to secure the debt, Davidson was subrogated to the original owners and holders of said debts, without regard to whether or not the owners and holders of the original debt consented or had any knowledge of the real transaction; and the debt being the main thing that gives the lien, the inquiry is and should be, Who is the real owner of the debt?—not what form the debt may be in; the question should be, Was the original debt paid or discharged altogether, or was it

transferred to another by agreement of the party paying it and the party who was finally to pay and discharge it? Fievel v. Zuber, 67 Texas, 275; Dillion v. Kauffman, 58 Texas, 696; Flanagan v. Cushman,. 48 Texas, 241; Fuller v. Oneal, 82 Texas, 423; Fears v. Alben, 69 Texas, 437; Johnson v. Portwood, 89 Texas, 248, 249; Pridgen v. Warn, 79 Texas, 589; Dilley v. Freedman, 25 Texas Civ. App., 39; Carson v. Conner, 83 Texas, 26; Douglas v. Blount, 22 Texas Civ. App., 493; Park v. Kribs, 24 Texas Civ. App., 650.

*Box & Watkins,* for appellee.—When vendor's lien notes executed or assumed by the vendee of land are paid, the legal title to the land immediately vests in the vendee, or his grantees in case he has previously sold the land or any part thereof. Carey v. Starr, 93 Texas, 511; Russell v. Kirkbride, 62 Texas, 455; McCamly v. Waterhouse, 80 Texas, 343; Ogburn v. Whitlow, 80 Texas, 241; Brown v. Montgomery, 89 Texas, 250.

One who holds purchase-money notes which are an encumbrance against land or timber can not rescind or cancel the contract or recover the land unless he is the owner of both the legal title to the land and the lien notes. One who owns the lien notes and has not the legal title to the land has no remedy by which to enforce the collection of his notes except by a suit to foreclose his lien. Cassady v. Frankland, 55 Texas, 452; Simpkins Equity as Applied in Texas, 242, 343, and cases cited; Fox v. Robbins, 62 S. W., 815.

Where a vendee has executed or assumed vendor's lien notes as an encumbrance upon land purchased by him, and thereafter sells an interest in said land to a sub-vendee, such sub-vendee has a right to require that the vendor's lien be foreclosed against the land in the inverse order of its alienation, so that the portion retained by the original vendee will be subjected to the lien first. If it is of sufficient value to satisfy the encumbrance, the holder of the vendor's lien would not be permitted to proceed against the interest owned by the sub-vendees. Burson v. Blackley, 67 Texas, 6; Elmendorf v. Beirne, 4 Texas Civ. App., 188; Simkins' Texas Equity, 229, 230.

One can not be subrogated to a lien which he has agreed to discharge. Simkins' Equity, 369.

As against all persons but his vendee, the vendor who reserves a lien on land conveyed by him has only the rights of a mortgagee out of possession, and his right to claim timber previously sold by his vendee would be limited to the satisfaction of his lien debt. If after the vendee has sold the timber he reconveys the land in satisfaction of the lien debt, or if the debt has been otherwise paid, the vendor has no further claim against the timber. Carey v. Starr, 93 Texas, 515; Smith v. Frio County, 66 S. W., 711; Hutchins v. King, 1 Wall., 53, 17 Law edition, 544; Lattimore v. Provine, 29 Texas Civ. App., 111.

HODGES, ASSOCIATE JUSTICE.—On the 4th day of July, 1908, the appellant, Hatton, instituted this suit against the Bodan Lumber Company, seeking the recovery of three tracts of land described as being parts of the Brown, Blanton and Staton surveys situated in Cherokee

County, and damages for the value of certain timber which it is alleged had been cut from said land and converted by the appellee; and also for an injunction restraining the appellee from cutting or carrying away any more of the timber situated on said tracts of land. The appellee answered by special and general exceptions and by a disclaimer of any interest in any of the property sued for except the timber on the Brown and Blanton surveys, plead not guilty, a general denial, and specially plead its title to the timber on the two surveys mentioned. The petition was presented to the district judge during vacation, and a temporary writ of injunction issued restraining the appellee from cutting or interfering with the timber. The appellee, by way of cross-bill, asked for damages sustained by reason of the issuance of the temporary writ of injunction. The case was tried before the court without a jury and a judgment rendered in favor of the appellant for the land and in favor of appellee for the timber, dissolved the temporary writ of injunction theretofore issued, and awarded to appellee damages in the sum of $100 against the appellant for the wrongful suing out of the restraining order mentioned. From that judgment the appellant, Hatton, prosecutes this appeal.

The land on which the timber in controversy was situated belonged to the estate of W. W. Burke, who died before any of the conveyances hereinafter mentioned were executed, and was the community property of himself and his first wife. On October 7, 1901, Mrs. M. A. E. Burke, the second wife of W. W. Burke, joined by Mrs. Jayro and husband and Mrs. Burke's three minor children, executed a deed conveying that portion of the land in controversy situated on the Brown and Blanton surveys to W. H. Spinks. The consideration for the conveyance was $350 in cash and four promissory notes, each for $87.50, two of which were due in six months from date, and the other two in twelve months. A vendor's lien was reserved in all the notes and also in the deed. Two of the notes were made payable to Mrs. Jayro, and the other two to Mrs. M. A. E. Burke. The reason given for thus dividing the consideration was that Mrs. Jayro, who was the only child of W. W. Burke, deceased, by his first wife, owned by inheritance from her deceased mother an undivided one-half interest in the property. The three other children who joined in the deed were the children of W. W. Burke and his last wife, Mrs. M. A. E. Burke. On April 5, 1902, Spinks by a deed of general warranty conveyed the same land to W. D. Acrey, the consideration being Acrey's two notes, one for $100 due in ninety days from date, and the other for $200 due in twelve months from date, and also the assumption by Acrey of the four purchase-money notes previously executed by Spinks to Mrs. Burke and others. A vendor's lien was reserved in favor of Spinks in both of the notes last above mentioned and in the deed. On July 25, 1902, Acrey by a deed of general warranty conveyed all the pine saw timber situated on the two tracts of land in controversy to the Arkansas Lumber Company, a private corporation, in exchange for some oak-tie timber situated upon another tract of land and claimed by the Arkansas Lumber Company. The lumber company was given ten years in which to remove the timber from the land. In the same instrument in which this timber was conveyed to the lumber company

other timber belonging to one Robert Nunley was also conveyed, Nunley joining Acrey in the deed. On the 12th day of February, 1906, Acrey conveyed the land in controversy by a deed of general warranty to W. C. Davidson, the deed reciting a consideration of $1 and the assumption by Davidson of Acrey's obligations on the vendor's lien notes before mentioned. This deed did not upon its face except the timber which Acrey had theretofore conveyed to the lumber company. In May, 1907, Davidson by a deed of general warranty conveyed the land in controversy to the appellant, Hatton, reciting a certain cash consideration and other deferred payments evidenced by notes. The appellee asserts title only to the timber, and claims under and by virtue of the conveyance from Acrey to the Arkansas Lumber Company. It also holds a conveyance from A. Harris & Company, who, it seems, bought the same timber from Robert Nunley. It appears that after the conveyance made by Acrey and Nunley to the Arkansas Lumber Company on October 7, 1902, Acrey conveyed his interest in the oak tie timber received in exchange from the lumber company to Nunley in consideration that the latter assume the payment of two of the notes made by Spinks to Mrs. Burke and others and assumed by Acrey. The testimony shows that the title to the tie timber received from the Arkansas Lumber Company failed, and that Nunley was compelled to pay for it a second time. It seems that by reason of that fact Nunley assumed that he owned the timber on the land in controversy and which had been conveyed to the lumber company, and conveyed it to A. Harris & Company for a recited consideration. A. Harris & Company subsequently conveyed to the appellee in this suit.

The rights of the parties to the timber in controversy must depend upon the rights which Davidson acquired by furnishing to Acrey the money for the payment of the purchase-money notes, and the subsequent conveyance to him from Acrey. If the effect of those transactions was to vest in Davidson the title to the timber as well as the land upon which it stood, then the appellee is without title. It must be remembered, however, that all the conveyances mentioned were placed of record, and there is no question raised as to whether or not the parties did not have constructive, if not actual, notice of all the transactions involved. Both Davidson and Acrey testified upon the trial that Davidson furnished the money with which the vendor's lien notes held by Mrs. Burke and Mrs. Jayro, and assumed by Acrey, were paid off; that this was done under an agreement between them that Davidson should hold the notes and have a lien on the land till he was repaid the money thus advanced. The court finds that the notes were all paid by Acrey to the original holders about the time they matured, and that they were by them marked paid and delivered to Acrey. He also finds that Davidson furnished a part of the money with which the notes were paid, but was unable to say how much had been so furnished. He fails to find whether or not the furnishing of the money was done by virtue of any agreement that Davidson should have a lien against the land to secure his reimbursement. It is urged by counsel for appellant as the basis of the right to recover in this suit, that Davidson, in furnishing Acrey with the money under the agreement testified to, became subrogated to the rights of the original vendor and

held the superior legal title to the land and all the timber on it; that having such a paramount legal title, he had the right to rescind the sale and recover possession of the premises, regardless of any equitable rights which had been acquired by Acrey or his vendee in the timber. It is argued that, having such a title, Davidson could foreclose his lien on the land and timber without making the purchaser from Acrey a party to the suit. We do not concur in this view of this case. The error, we think, lies in the fact that it assumes that Davidson had a greater right by reason of having furnished a part of the money with which Acrey paid off the vendor's lien notes under the agreement mentioned, with Acrey, than such a transaction conferred. If we concede that the court should have found as a fact that the notes were paid with Davidson's money with the understanding that he should hold them and have a lien on the land until he was reimbursed, he still would be no more than a mere lien-holder. In his pleading the appellant has not claimed any more for Davidson. After describing the various transactions leading up to the acquisition of the title by Acrey, he alleges that "by an agreement between Acrey and Davidson, and with an understanding on the part of both that Davidson would retain the vendor's lien on the said land, and said Davidson would be subrogated to same lien as was against the land, the said Davidson furnished the $100 cash to pay on part of the land to the said Acrey, and the said Davidson furnished the money to pay all of the said notes, both the notes signed by Spinks and Acrey, and the said notes were each and all turned over to said Davidson to be held by him until paid by said Acrey." It is also alleged that on the 31st day of December, 1902, Acrey gave Davidson a mortgage on the land to secure the amount of money so paid; that on the 12th day of February, 1906, at the time of the conveyance by Acrey to Davidson, there was still due Davidson on said notes the sum of $700. If Davidson furnished the money to pay the notes with the understanding with Acrey that he should have a lien till he was reimbursed, he became subrogated to the liens held by the original creditors. Fievel v. Zuber, 67 Texas, 280, 3 S. W., 273; Johnson v. Portwood, 89 Texas, 248, 34 S. W., 598; Oury v. Saunders, 77 Texas, 278, 13 S. W., 1030; Mergele v. Felix, 45 Texas Civ. App., 55, 99 S. W., 710. But the rights to which Davidson was subrogated were only those of a creditor holding a lien upon the property sold, and not the superior legal title held by the vendor. Davidson acquired no greater rights than he would have taken had he procured the notes by assignment from the original vendors. It is well settled that the assignee of a vendor's lien note does not by such assignment take the superior legal title held by the vendor. Hamblin v. Folts, 70 Texas, 133, 7 S. W., 834; Farmers' Loan & Trust Co. v. Beckly, 93 Texas, 272, 54 S. W., 1029; White v. Cole, 87 Texas, 501, 29 S. W., 759. Not having acquired the superior legal title, Davidson could not, upon default in the payment of the notes held by him, rescind the contract of sale and recover the land. His remedy was by a foreclosure of his lien. Had he sought a foreclosure the purchaser of the timber would have been a necessary party to the suit. Where the vendor or the assignee of the superior legal title sues for a foreclosure of his vendor's lien it is not necessary to

make a subsequent purchaser a party in order that the purchaser at the foreclosure sale may thereafter maintain an action to recover the premises from some subsequent purchaser from the vendee. This results because the purchaser at the sale in the foreclosure proceedings acquires all of the interest held by the original vendor, including his superior legal title, and is in the same attitude as if he had received by assignment from such vendor both the debt lien and the legal title. Having acquired this paramount right and superior title, such purchaser could exercise the right of rescission, just as could the original vendor before suit, and recover the land subject to the equitable rights of a subsequent purchaser to redeem by paying the price at which the property was purchased at the foreclosure sale. Ransom v. Brown, 63 Texas, 188; Foster v. Powers, 64. Texas, 247; Thompson v. Robinson, 93 Texas, 165, 54 S. W., 244. But where a mere lien-holder, or mortgagee, having no legal title, sues to foreclose, he must make subsequent purchasers parties, or their rights are not affected by the judgment rendered. Ufford v. Wells, 52 Texas, 617; Wortham v. Boyd, 66 Texas, 407, 1 S. W., 110; Robinson v. Black, 56 Texas, 215; Rhine v. Hodge, 1 Texas Civ. App., 368, 21 S. W., 141; Bradford v. Knowles, 86 Texas, 509, 25 S. W., 1117; St. Louis, A. & T. Ry. Co. v. Whitaker, 68 Texas, 634, 5 S. W., 448. Acrey had the right, at the time he did, to convey the timber on the land to the Arkansas Lumber Company, and the purchaser took an equitable title subject to the lien and superior rights retained by the original vendors. The rights thus acquired by the lumber company in the timber could not be extinguished by another conveyance by Acrey. He could not convey to Davidson any greater interest than he had. Having sold and conveyed the timber, it was no longer his. Unless subrogation has the legal effect of vesting a greater right in the party who furnishes the money with which to pay vendor's lien notes than would an assignment of the debt and lien by the original vendor, Davidson could not claim to hold the legal title of the vendors in this instance. In the case of Thompson v. Robinson, before referred to, the city of San Antonio, which was the original vendor, instituted foreclosure proceedings in which a judgment was rendered in its favor and the land sold for an amount sufficient to pay off the entire debt. The court held in that case that the purchaser at the foreclosure sale acquired all of the rights which the city held, and was also subrogated to its lien, and therefore had the same right to rescind and recover the property as did the city itself prior to the institution of the suit. The situation of Davidson is far from being identical or even analogous to that of the purchaser under those foreclosure proceedings. Davidson took nothing from the original vendor except the debt and lien. He could not acquire from Acrey that which Acrey did not own—the superior legal title to the property. If the payment of the purchase money by Acrey had the effect of devesting the vendors of their superior legal title, it immediately vested in Acrey and his vendee to whom he had previously conveyed the timber, and the legal title to the timber was not disturbed by the conveyance to Davidson. It is immaterial how we treat the consideration of the conveyance from Davidson to Acrey—whether we regard it, as stated in the deed, as an assumption of the payment of an outstanding debt

against the land, or as the cancellation and satisfaction of the claim held by Davidson against Acrey. The legal result would be the same in either case. If Davidson assumed the debt due from Acrey, he substituted himself for the latter and became primarily liable, and a subsequent payment by him would be merely the discharge of his own obligation, and he would not thereby be entitled to any rights by subrogation. McDowell v. Jones Lumb. Co., 93 S. W., 476, 42 Texas Civ. App., 260, and cases cited. If, on the other hand, Davidson took the conveyance from Acrey in satisfaction of what Acrey owed him, this amounted to a cancellation of the debt and lien held by Davidson in exchange for the interest which the deed from Acrey actually conveyed —the interest of Acrey in the land exclusive of the timber. These claims being thus satisfied by the conveyance of the land alone by Acrey to Davidson, the purchasers of the timber became vested with both the legal and the equitable title thereto. Gray v. Tribue, 118 S. W., 808, and cases cited.

The subsequent conveyances made to Davidson by Mrs. Burke and Mrs. Jayro did not clothe Davidson with the superior legal title to the land. It may be true that it was held by them in trust for the benefit of Davidson so long as he held an unsatisfied vendor's lien. But when his debt was satisfied and the lien canceled, as was done by taking a conveyance of Acrey's interest, these parties were devested of that legal title and thereafter had none to convey.

We have so far discussed the questions involved upon the theory that the evidence showed a right of subrogation in Davidson. The court concluded as a fact that the notes were paid off by Acrey and were marked paid or canceled by the original vendor, and were never assigned. While finding that Davidson furnished a part of the money with which these payments were made, he does not find facts necessarily establishing a right of subrogation in Davidson. His finding is not inconsistent with the conclusion that the advancement of the money by Davidson may have been a mere loan to Acrey, secured by the mortgage given, with no understanding as to any other lien being reserved by him against the land to secure his reimbursement. He finds that the notes had been in Davidson's possession, but that they were in such shape as to raise serious doubts as to how and when he obtained them. He also finds that Davidson did not acquire the legal title from the vendors at the time the notes were paid by Acrey. He further finds that at the time of the conveyance from Acrey to Davidson the land without the timber was ample to satisfy the debt due from Acrey. In the event that Davidson advanced the money without any understanding that he should have a lien to secure his reimbursement, not being under any compulsion to do so, he would not be entitled to subrogation, even though the money furnished was actually used in the discharge of the debts. Fieval v. Zuber, and Oury v. Saunders, supra. The court having failed to find any fact inconsistent with his conclusions of law, we are bound to presume that his determination of the issues of fact were such as to support the judgment rendered. Fitzhugh v. Franco-Texas Land Co., 81 Texas, 313, 16 S. W., 1078. It is true the appellant in one of his assignments of error complains of the failure of the court to find more fully upon the issues of fact; but the

record does not show the presentation and refusal of any request for additional or more specific findings. In the absence of such, the failure of the court to make more specific findings does not constitute reversible error. Fitzhugh v. Franco-Texas Land Co., supra.

It is also argued that the consideration for the conveyances of the timber to the Arkansas Lumber Company, under whom the appellee claims, having failed, that company acquired no.title to the timber on the land conveyed by Acrey. We do not understand that upon the mere failure of the consideration for which land has been sold the conveyance becomes *ipso facto* void and that the vendor is thereby reinvested with his original title. The rule is that the failure of consideration merely gives the right to a rescission and recovery of the property conveyed. When the grantor takes in exchange a conveyance to other property to which the title fails, he may recover back his property or proceed against his grantor for a breach of warranty. The findings of the court and the evidence fail to show that Acrey, who was the only party who could complain of this failure of title to the oak tie timber, ever asserted any right of rescission or ever thereafter claimed any title to the timber on the land in controversy. It is shown that Davidson, his vendee, afterwards treated those claiming the timber under a conveyance from the Arkansas Lumber Company as the true owners. The court finds that he did recognize the rights of the appellee as subordinate only to his superior lien. This recognition upon his part was shown by his notification to them of the maturity of his claim against the property, and a demand upon them for payment of the debt.

The testimony shows that besides Mrs. Jayro, a child of W. W. Burke by his first marriage, the second Mrs. Burke had three children, all of whom were minors at the time they executed the deed to Spinks, under whom Acrey claimed; that since that time, and after the appellant acquired title, one of them had married Dowling, and had conveyed all her right, title and interest in the land to Hatton, the appellant. The record also shows that some probate proceedings were instituted by W. T. Burke, claiming to act as the guardian of the other two minor children, in which it was sought to have the sale made to Spinks confirmed. The application and orders of the court are somewhat ambiguous, and they are not inconsistent with the construction that it was an effort to confirm the original sale made to Spinks, rather than to repudiate it and make a new sale for an independant consideration to Hatton. The purpose of this evidence doubtless was to show that the appellee had not acquired the interest of the minors in the timber. The deed of a minor is not void, but only voidable, and conveys a good title unless repudiated by the minor within a reasonable time after attaining his majority, or, in the case of a female, after marriage. Askey v. Williams, 74 Texas, 297, 11 S. W., 1101; Simkins v. Searcy, 10 Texas Civ. App., 406, 32 S. W., 851; Searcy v. Hunter, 81 Texas, 646, 71 S. W., 272. It is only in cases where it is shown that the contract is prejudicial to the infant that it will be treated by the courts as void. Where one seeks to disaffirm a deed on the ground that it was executed during his minority, if the consideration is still in his possession or within his control he must restore it as a condition

precedent to the exercise of the right of disaffirmance. Bullock v. Sprowls, 93 Texas, 191, 54 S. W., 661. The record shows that half of the consideration paid by Spinks and Acrey went to Mrs. Burke, the mother of the minors, and that she invested it in a lot in Forrest for the benefit of the minors, and that she and the minors still own this property. Neither Mrs. Dowling, the minor who married subsequent to making the deed, nor the guardian, W. T. Burke, made any offer to restore the property purchased with that money. It does not clearly appear from the deed by Mrs. Dowling to Hatton that she intended to repudiate her former conveyance. We are inclined to regard both her deed and that executed by the purported guardian of the other minor children as ratifications of the original transaction. There is nothing in the record to show that Hatton paid any distinct and additional consideration for the conveyances which he received, and the application for the sale of the property recites the fact that the guardian and the minor children are desirous of ratifying and confirming the original sale. The act of disaffirmance must be distinct and unequivocal. Harris v. Musgroves, 59 Texas, 403. But whatever may be the legal result of the transactions with the minors and the conveyances made thereafter to Hatton, the fact remains that the appellee was at least a tenant in common with those who owned the minors' interest, if there was any interest owned and held apart from the appellee. As such tenant in common, he clearly had the right to go upon the premises and appropriate a portion at least of the timber. In this suit it is not shown that he had appropriated more than would be his fair proportion of the timber, nor is it claimed that he is using his privileges as a co-owner to damage the interest of any other person claiming to be a joint owner.

The appellee has very strenuously objected to our consideration of the assignments of error in this appeal. While not desiring to make our action a precedent to be followed in other cases, we have concluded to dispose of the appeal upon the principal issue involved. Having determined the fundamental question contrary to appellant's contention, the remaining questions presented in other assignments become immaterial.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.