DAVIDSON v. BODAN LUMBER CO. et al. †

(Court of Civil Appeals of Texas. Texarkana. Jan. 19, 1912. Rehearing Denied Feb. 1, 1912.)

1. JUDGMENT (§ 682*)—RES JUDICATA—PERSONS CONCLUDED.

Plaintiff under his deed of land from H. after final judgment in a suit between H. and defendant, adjudging the title to timber thereon to be in defendant, cannot claim the timber.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1203–1205; Dec. Dig. § 682.*]

2. EXCHANGE OF PROPERTY (§ 7*)—FAILURE OF CONSIDERATION—REVERTING RIGHT.

Where A. conveyed pine timber to L. in exchange for a conveyance of oak timber, and A. then conveyed the oak timber to N., and was fully paid therefor by N., if any right to the pine timber reverted from L. because of failure of the title to the oak timber, such right would be in N.

[Ed. Note.—For other cases, see Exchange of Property, Dec. Dig. § 7.*]

3. SUBROGATION (§ 23*)—ADVANCEMENT TO PAY LIEN NOTES.

One merely advancing money with which to pay off vendor's lien notes, with no understanding as to having a lien, is not entitled to subrogation.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23.*]

4. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—EFFECT OF PAYMENT AND DISCHARGE.

Payment and discharge of a vendor's lien by the vendee vests the legal title to the property in the vendee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

5. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—REMOVAL.

The purchasers of standing timber having used only such means for removing it as was expressly authorized by the grant, without unnecessary injury to the land, are not liable for any injury to the land.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

6. NEGLIGENCE (§ 136*)—FIRES—DIRECTING VERDICT.

A peremptory instruction is properly given in an action by the owner of land against the owner of the standing pine timber, who was removing it for causing fire to run over the land, injuring young trees; there being no evidence of who or what caused the fire.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 136.*]

Appeal from District Court, Cherokee County; James I. Perkins, Judge.

Action by W. C. Davidson against the Bodan Lumber Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

L. D. Guinn and W. E. Donley, for appellant. John C. Box and R. O. Watkins, for appellees.

LEVY, J. The suit was by appellant, seeking to recover title to certain lands and the timber thereon, and damages for the conversion of certain pine timber, and for trespassing and negligently causing fire to run over the land. Appellees do not assert title to the land, but claim to be the owners of the pine timber by purchase with the acquired right to remove it from the land. Appellees further deny damage to the land and having set out any fire. The court gave a peremptory instruction to the jury to return a verdict for appellant for the land, and in favor of appellees on the other issues; and judgment was entered accordingly, but with the costs against appellees up to and including the trial of the case.

The controversy here first involves the question of whether or not the Bodan Lumber Company was the owner of this timber, and had the right to remove it from the land. It was agreed that W. W. Burke acquired the title to the land in controversy, and that it was his separate property. Burke died intestate, leaving four children. It was shown that, after the death of Burke, his wife and all of the children conveyed the land by warranty deed to W. H. Spinks on October 7, 1901. Spinks conveyed the same land to W. D. Acry by warranty deed dated April 5, 1902. W. D. Acry conveyed the pine timber on this land to the Arkansas Lumber Company on July 25, 1902, with the express right to enter the land and remove the timber. W. H. Bonner was appointed receiver of the property of the Arkansas Lumber Company on December 16, 1902. On January 29, 1908, the district court of Cherokee county, wherein the receivership proceedings were pending, ordered W. H. Bonner to sell the pine timber in question. Acting under the order, the receiver on April 7, 1908, made sale, which was confirmed by the court, and executed deed to the Bodan Lumber Company. It appears that the deed from Acry to the Arkansas Lumber Company was in exchange for some oak tie timber situated upon another tract of land and claimed by the Arkansas Lumber Company. In the same instrument in which this timber was conveyed to the lumber company other timber belonging to Robert Nunley was also conveyed, Nunley joining Acry in the deed. After the conveyance by Nunley and Acry to the Arkansas Lumber Company, Acry conveyed his interest in the oak tie timber received in exchange from the lumber company to Nunley. It appears that the title to the tie timber received from the Arkansas Lumber Company failed, and Nunley was compelled to pay for it a second time. It further appears that Nunley had fully paid Acry for his interest in the tie business, including the tie timber which he and Acry had acquired from the Arkansas Lumber Company in exchange for the pine timber in question. When the title to this tie timber had failed, Nunley, having bought part of it from the Arkansas Lumber Company and the remainder from Acry, assumed that the pine timber reverted to him, and conveyed

it to A. Harris & Co. A. Harris & Co. conveyed it to appellee Bodan Lumber Company. From these conveyances it conclusively appears that the Bodan Lumber Company had title to the timber, unless defeated by some superior right in appellant. It was shown that on February 12, 1906, Acry conveyed the land in controversy by deed of general warranty to W. C. Davidson, the deed reciting a consideration of $1 and the assumption by Davidson of Acry's obligation on vendor's lien notes to Spinks. This deed upon its face did not except the timber which Acry had theretofore conveyed by deed to the Arkansas Lumber Company, and of which conveyance Davidson had full knowledge. In May, 1907, Davidson by a deed of general warranty conveyed the land in controversy to T. S. Hatton, who had notice of the sale of the timber, reciting a cash consideration and deferred payments evidenced by notes. In 1908 Hatton sued the Bodan Lumber Company for this land and the timber, and the timber was awarded the Bodan Lumber Company by the judgment of the district court. This judgment was affirmed by this court on appeal (Hatton v. Bodan Lumber Co., 123 S. W. 163), and application for writ of error denied by the Supreme Court.

[1] Appellant now claims under deed from Hatton after rendition of the above judgment. It was shown that Davidson had notice of the fact of previous sale, as well as the judgment, when he took the conveyance. It was after the writ of error was denied in this appeal that the Bodan Lumber Company cut and removed the timber. Indisputably it appears, we think, that the Bodan Lumber Company, as held in the former appeal, had acquired title to the timber against Hatton. And appellant purchasing the land with full notice, as it indisputably appears, that the Bodan Lumber Company had previously purchased and had a conveyance to the timber, and that the Bodan Lumber Company was adjudged the owner, it must be held that the Bodan Lumber Company had acquired title to the timber against him.

[2] If any right to the pine timber in question had reverted from the Arkansas Lumber Company because of the failure of the title to the tie timber which the Arkansas Lumber Company exchanged for the pine timber, the right to it would be in Nunley, who, according to the conclusive proof, had acquired Acry's rights, paying him for them and receiving a warranty deed to the tie timber. And, if there is any doubt that the title to the three heirs of W. W. Burke, who were minors at the time of their execution of the deed to Spinks, had not passed to him by that deed, it still must be said that their title passed to T. S. Hatton by the deed of Corley Dowling, one of the minors, who, joined by her husband, conveyed her interest by deed to T. S. Hatton, and also by the deed of the guardian of the other two minors, who conveyed under the order of the probate court. If their title to the timber in suit was acquired by Hatton, appellant's vendor, it was clearly divested out of Hatton by the judgment of the district court, and vested in the Bodan Lumber Company.

[3] Appellant, though, makes the point that, as there was an agreement between him and Acry by which he was to furnish the money to pay off the vendor's lien notes which Acry had executed and assumed to pay in the deed to Acry from Spinks, he was entitled to be subrogated to the lien given to secure their payment, and also subrogated to the legal title, and because thereof he was entitled to recover the timber. The deed to Acry from Spinks recited the consideration as being two notes, one for $100 due in 90 days, and one for $200 due in 12 months, and also the assumption by Acry of the four purchase-money notes previously executed by Spinks to Mrs. Burke and others. Appellant testifies that he furnished Acry the money with which to pay these notes. But in this connection it conclusively appears that the agreement was merely that appellant would loan that amount of money, and it was so understood. There was no joint acquisition of the land by Acry and Davidson, nor was there any intended beneficial interest in the land to Davidson, nor was it so understood by Acry or Davidson, nor claimed by Davidson by reason of the purchase or agreement. Neither is there any pretense in the evidence that Davidson was the original vendor of either Spinks or Acry, or had any interest or claim in the land at the time of his conveyance. Under these circumstances conclusively appearing, there was no legal title vested in Davidson, and he could predicate no legal title in the land merely upon the ground that he furnished the money to pay off the notes. Neither in such circumstances could he legally predicate the claim of subrogation to the legal title. Hatton v. Bodan Lumber Co., supra. If appellant was the purchaser or assignee of the notes, or because he furnished the money to pay same off was entitled to be subrogated to the lien, he stood in the legal attitude towards the land simply as a lienor, and had no higher right, it conclusively appearing that he was not a purchaser or intended purchaser at the time he furnished the money, of any interest or beneficial interest in the land. In this connection it must be said that there is no testimony that appellant bought these notes from the original holders or any one else. It merely appears in the strongest light of the evidence that the notes were paid off while in the hands of the original vendors, and were canceled by the original holders at the time of their payment. It appears that the original vendors holding these notes did not sell them. But, granting that appellant was entitled to be subrogated to the lien because he paid off the notes for Acry, it conclusively appears that such lien has been fully satisfied and discharged to ap-

pellant's entire satisfaction of the debt owing him. When he took the deed from Acry in full satisfaction of the money he had previously furnished to pay off the notes, which is conclusively shown, he was fully paid and the lien was discharged, and he was no longer a lienor. At the time he took the conveyance in satisfaction of the debt appellant knew of the previous conveyance of the timber to appellee, and accepted the conveyance with this knowledge. It appears, further, that it was three or four years before Davidson took the deed from Acry in satisfaction of the money furnished that the notes were paid off and marked canceled by the original holders, and that it was nearly four years after the payment of the vendor's lien notes to the original holders that Acry sold the timber in suit to the Bodan Lumber Company. So if it was the purpose and intention of Acry to borrow a sum of money from appellant, and appellant so agreed, and to assume the relation of debtor and creditor only with regard to the money so borrowed, and the evidence fairly raises the issue, and Acry then used the money to pay off the notes, then the lien was discharged at the time the notes were paid and marked cancelled by the original vendors holding the notes.

[4] When a vendee pays off and discharges the vendor's lien the payment and discharge operate to vest the legal title in the vendee. Stitzle v. Evans, 74 Tex. 596, 12 S. W. 326. The Bodan Lumber Company would therefore have acquired the timber from Acry free from any lien. The notes were each marked "canceled" at the time Davidson took his deed from Acry in discharge of the debt. The law applicable to the controlling issues of title here is clearly announced by Justice Hodges in the Hatton Case, supra, and here, referred to.

[5] The next issue is as to the claim for damages to the land. The Bodan Lumber Company had 10 years within which to remove the timber, and in express terms "the right of ingress and egress to and from the said lands, with the privilege of opening and constructing all necessary wagon roads and tramroads for the purpose of removing the pine timber thereupon." The undisputed evidence shows that the usual method of removing pine timber was by means of teams and wagons and tramroads such as were used by appellees in removing this timber, and that this custom prevailed, and had prevailed for more than 10 years. There is no evidence of unnecessary digging in the land or destruction of the timber. The tram track was laid flat on the ground, and no ditches were cut. It, together with the wagon roads, penetrated the pine woods and creek bottoms, and went through no inclosures nor near any private house. The evidence does not show that any washes had

been made by any of the roads. The right of ways for wagon roads and tramroads were only such as were of necessity; and no more timber was cut away than was necessary, and none of it was removed from the land after being so cut. Under the grant of the timber appellees had the right to use so much of the surface of the land, in order to remove the timber, as is strictly necessary and reasonable and in the course least prejudicial to the owner. This involves the right to use such means as may be reasonably necessary for the purpose of transporting the timber severed from the land. But here the means used were expressly authorized by the grant. The facts being all one way, and no unnecessary injury to the land shown, there was no issue presented for the jury.

[6] As to the next contention, that appellees caused fire to run over the land: While there is some evidence that a fire had run over about 100 acres of the land, injuring the young trees, the testimony wholly fails to show who or what caused the fire. It was conclusively shown that the fire occurred before the engine of appellees reached the locality, and that it did not even come from the direction from which the engine and track entered the land. In the absence of some circumstances showing that the engine set out the fire (and there were none), an issue in this respect was not presented.

After full consideration of the record, we conclude that the court did not err in giving a peremptory instruction, and the assignment is overruled.

As no reversible error is otherwise presented by the assignments, the judgment, we conclude, should be affirmed; and it is accordingly so ordered.

WILLSON, C. J., not sitting.