WESTERN NAT. BANK OF FT. WORTH v.
TEXAS CHRISTIAN UNIVERSITY
et al. (No. 8126.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 3, 1915. Rehearing Denied
May 8, 1915.)

1. GARNISHMENT ☞133—BRINGING IN NEW
PARTIES.

The relation between depositor and bank is that of debtor and creditor only; and hence, where a landowner deposited in a bank funds to be used in paying a building contractor, the fact that the bank debited the account with sums advanced to the contractor does not render it liable for a conversion. Hence, in an action where other creditors of the contractor garnished the funds in the hands of the owner, the bank might be impleaded and the garnishee's rights against it adjudicated.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 262; Dec. Dig. ☞133.]

2. GARNISHMENT ☞133 — RIGHTS OF GARNISHEE—INTERPLEADER.

A garnishee or other stakeholder may implead all persons having claims against the funds held by him. Hence the owner of a building may, in a proceeding by creditors of the contractor, implead all persons having claims

to funds deposited in a bank to be applied on the amount due the contractor.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 262; Dec. Dig. ☞133.]

3. APPEAL AND ERROR ☞1036, 1040—RE-VIEW—HARMLESS ERROR.

Where appellant was in no way prejudiced by the misjoinder of parties and actions, the overruling of his exceptions and plea setting up misjoinder was not error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4074, 4089–4105; Dec. Dig. ☞1036, 1040.]

4. SUBROGATION ☞23—RIGHT TO SUBROGA-TION.

Where a bank advanced to a contractor money used by him in discharging claims for labor and material on a building, but there was no agreement between the bank and the owner that such payments should be made or that the bank should be subrogated to any liens in favor of the holders of the claims, the bank is not subrogated to such liens.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. ☞23.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by Mitchell-Gartner & Company and another against the Texas Building Company, in which the Texas Christian University was summoned as a garnishee. The garnishee interpleaded the Western National Bank of Ft. Worth and others. From a judgment against the bank, it appeals. Affirmed.

Stephens & Miller, of Ft. Worth, for appellant. Flournoy, Smith & Storer, Capps, Cantey, Hanger & Short, and David B. Trammell, all of Ft. Worth, for appellees.

DUNKLIN, J. The Texas Building Company erected a building for the Texas Christian University known as "Clark Hall," under a written contract, by the terms of which the owner was to pay to the contractor $56,200. After all of the contract price had been paid with the exception of $5,505.20, writs of garnishment were served upon the university by Mitchell-Gartner & Co. and J. W. Mitchell & Co., judgment creditors of the building company, to subject the balance owing by the university to the payment of the judgments. In its answer to the writ, the garnishee alleged the building contract, the balance due thereon shown above, and interpleaded the Western National Bank of Ft. Worth, together with numerous individuals and firms who held claims against the contractor for labor and material furnished in the construction of the building. Prior to the service of the writs of garnishment, the university had deposited in the bank named the sum of $4,561 for the purpose of applying the same to the payment of the unpaid balance of the contract price for the building whenever the building should be finished. As a basis for interpleading the bank, the garnishee alleged that $3,100 of the amount which they had so deposited had been wrongfully applied by the bank to the payment of a draft drawn by the building company upon the university, which draft the company had never accepted. It was further alleged that the university had never in any manner agreed to the appropriation so made by the bank, and garnishee prayed for a determination of the issue whether or not the act of the bank in so appropriating said credit was rightful. In effect, this plea was that, if the payment of $3,100 so made by the bank constituted a proper debit against the university under the building contract, then the garnishee was entitled to credit therefor as against the building company and all parties having claims for labor and material used in the construction of the building; otherwise, the garnishee was entitled to a judgment against the bank for said sum for the purpose of discharging the unpaid claims for labor and material. The bank excepted to the interpleader against it upon the ground of a misjoinder of parties and causes of action, and also filed a plea of misjoinder. It further pleaded that $3,100 of the amount to the credit of the university in the bank was appropriated to cover the pay roll of the building company for labor performed upon the building in controversy upon the advice of John L. Cassell, one of the building committee of the university with authority to act for the university in the premises; that but for such advancements work upon the building would have ceased and the building would not have been ready for occupancy at the time desired by the university—all of which facts were made known to Cassell before he agreed to such an appropriation and induced him to make such agreement. The other parties interpleaded filed pleas of intervention setting up their claims for labor and material furnished in the construction of the building, and a judgment was rendered in their favor against the university for the aggregate sum of $3,604.39, directing that the same be paid in full out of the amount due by the university, and that the balance remaining of $5,505.20, due on the contract for the building, should be applied to the payment of the garnishing creditors. Judgment was also rendered in favor of the garnishee against the bank for the $3,100 which the bank had appropriated out of the deposit made by the university. From that portion of the judgment last mentioned the bank has appealed.

The trial was by the court without the aid of a jury, and the findings of fact filed by the trial judge have not been assailed. According to those findings, it appears that the building company also kept an account with appellant bank using the fictitious name of "Alvord Special," for the purpose of concealing from its creditors any balance that might be due it. On October 6, 1913, the building company drew a draft on the university in favor of the bank for the sum of $4,000, which the bank accepted and credited to the Alvord Special account on the same day. On

October 15, 1913, the bank charged $3,100 of the draft to the account of the university. Between October 6th and October 28th, the building company, by checks on the Alvord Special account, paid the sum of $1,288.46, for material and labor used upon the building in question. On October 25, 1913, the writs of garnishment were served upon the university.

The following are additional findings by the trial judge:

"(8) At the time said draft for $4,000 was made up on October 6, 1913, the Texas Building Company owed no items·for labor for the construction of Clark Hall.

"(9) It was from this draft of $4,000, dated October 6, ·1913, that the Western National Bank endeavored to appropriate the sum of $3,100, charging it to the account of the Texas Christian University on October 15, 1913.

"(10) The Western National Bank not only paid checks upon the Texas Christian University job, but also paid all checks indiscriminately given by the Texas Building Company on any job out of the account known as 'Alvord Special.'

"(11) Said sum of $3,100 was neither appropriated nor used by the Western National Bank exclusively for the payment of pay rolls .or other debts arising out of the Texas Christian University contract after October 6, 1913, and the same was not appropriated by the Western National Bank for that purpose exclusively.

"(12) At the time of these transactions· the Texas Building Company owed the Western National Bank the sum of $50,000.

"(13) The Western National Bank agreed that when the work was first begun on the Texas Christian University contract that it would advance money to the Texas Building Company for the whole contract whenever that company needed money and that it would be loaned to said company.

"(14) No estimate of the architect accompanied the $4,000 draft given by the Texas Building Company to the Western National Bank and drawn on Texas Christian University October 6, 1913. The contract for the erection of said building provided that no payment should be made except on estimate furnished by the ·architect."

"(17) There was no contract or agreement between the Texas Christian University and the Western National Bank, whereby the said Western National Bank was to be subrogated to any rights of the Texas Christian University in the sum of $3,100 appropriated out of said draft or any other sums represented by the same."

"(21) On October 15, 1913, the Western National Bank appropriated to its own use $3,100 of said money of the Texas Christian University on deposit with said bank without authority or direction so to do by Texas Christian University, its treasurer, or any of its officers or agents, and without any right so to do, and said bank has no just valid claim to said $3,100, or any part thereof.

"(22) At the time Mr. Taylor for the Texas Building Company agreed to give the draft for $4,000 to Western National Bank, drawn upon the Texas Christian University, Mr. Eddleman, president of the Western National Bank, agreed with Mr. Taylor that the draft would not be used unless Mr. Cassell agreed that the Texas Christian University would advance the money upon said draft, and that the draft would not be used for the purpose of paying the checks given by the Texas Building Company unless such agreement was made by the Texas Christian University through Mr. Cassell.

"(23) Mr. Cassell did not agree to pay this draft or any part of it on behalf of the building committee or on behalf of the Texas Christian University or personally, and did not agree to protect the Western National Bank or to accept on behalf of the building committee or on behalf of the Texas Christian University the draft for $4,000, or a portion of that amounting to $3,100.

"(24) Said draft for $4,000 by the Texas Building Company to the Western National Bank was not intended and did not constitute an assignment of the fund due and owing by the Texas Christian University to the Texas Building Company, neither for the entire amount of $4,000, nor for the sum of $3,100, for which the charge was entered on October 15, 1913.

"(25) There was no contract between the Texas Building Company and the Western National Bank that the· said bank, on the payment of any part of said $4,000 or $3,100 to any person or persons who had furnished labor or material in the construction of said Clark Hall, should be subrogated to the lien, or the right to fix any lien or liens, of such person or persons, against the building in question or against said university or its property or said fund."

**[1-3]** The first two assignments of· error present the contention that the court erred in overruling appellant's exception to the petition and plea in abatement presenting the issue of misjoinder of parties defendant and causes of action. The proposition submitted under these two assignments reads ·as follows:

"A garnishee cannot join an action for conversion of his property with a suit in the nature of an interpleader, brought to determine the · extent of lien indebtedness upon his property in order that he may know the amount of his indebtedness to the defendant in the action out of which the garnishment was issued, when there can be no joint liability between the persons charged with conversion and those claiming the liens and the plaintiff in garnishment."

In the cases of Stewart v. Gordon, 65 Tex. 345, Frey v. Railway Co., 86 Tex. 466, 25 S. W. 609, and Oak Cliff College v. Armstrong, 50 S. W. 610, as well as in other authorities cited in appellant's brief, it was held that actions for debt cannot be joined with actions for tort when the causes of action were against different persons.

While the answer of the garnishee contained allegations, in effect, that the bank had wrongfully converted to its own use $3,-100 of the amount deposited in that bank to the credit of the garnishee, that allegation did not charge a tort committed, for it is well settled that the relation between a de-, positor and a bank is that of debtor and creditor only. See Baker v. Kennedy, 53 Tex. 200; Van Winkle Gin Co. v. Citizens' Bank, 89 Tex. 147, 33 S. W. 862. Furthermore, it is a familiar rule that a garnishee, or other stakeholder, for his protection has a right to interplead all persons having claims against the fund held by him. Nixon v. Malone, 100 Tex. 250, 98 S. W. 380, 99 S. W. 403; Kelly Grain Co. v. English, 34 S. W. 651; Beilharz v. Illingsworth, 132 S. W. 106; Alamo Ice Co. v. Yancey & Fraser, 66 Tex. 187, 18 S. W. 499. Further still, it does not appear that appellant was in any manner prejudiced by the joinder of parties and causes of action, to ,which, objection was made, and, even though it should be said that there was error

in overruling the exception and plea, the same would not present cause for a reversal of the judgment under the rule established in such cases as Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423; Texas Brewing Co. v. Bisso, 50 Tex. Civ. App. 119, 109 S. W. 270; Thompson v. Griffin, 69 Tex. 139, 6 S. W. 410; G. C. & S. F. Ry. Co. v. Weddington, 31 Tex. Civ. App. 235, 71 S. W. 780.

[4] By other assignments appellant insists that, as the $1,288.46 advanced by it to the building company was used in paying claims for labor and material in the construction of the building, it was subrogated to the rights of the holders of such claims to a lien upon the building, and that, in any event, the court erred in rendering a judgment for more than $1,811.54; that amount being the difference between the $1,288.46 so advanced, and the amount of $3,100 for which judgment was rendered against the bank.

The findings of fact by the trial court show that the advancement by the bank of money used in the discharge of claims for labor and material were not upon any agreement between the bank and the Texas Christian University that such payments should be made. Neither is there any finding of fact, nor are we cited to any evidence to support such a finding, that the checks so paid by the bank were paid under any agreement between the bank and the parties to whom such payments were made that the bank should be subrogated to any liens upon the building in favor of the holders of such claims. Under such circumstances, there is an absence of any showing of a right in the bank to claim a lien upon the building by reason of such payments under the doctrine of subrogation. Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273; Hatton v. Bodan Lbr. Co., 57 Tex. Civ. App. 478, 123 S. W. 163; Davidson v. Bodan Lbr. Co., 143 S. W. 700; Shappard v. Cage, 19 Tex. Civ. App. 206, 46 S. W. 839; Furche v. Mayer, 29 S. W. 1099.

For the reasons indicated, the judgment in favor of the garnishee against the bank is affirmed. In all other respects the judgment is undisturbed.