### G. H. OURY ET AL. V. LEANDER SAUNDERS ET AL.
#### No. 6557.

1.   **Resulting Trusts.**—To constitute a resulting trust the payment must be made at the time of the purchase and not subsequent.

2.   **Subrogation.**—The right of subrogation does not exist when payment is made without legal obligation, and without being required for the preservation of some right of property in the party paying. If, however, the payment be made at the request of the debtor under circumstances which would operate as a fraud if the debtor were permitted to insist that the security for the debt was discharged by the payment, then the party paying may be subrogated to the security as against the debtor. See opinion for facts illustrating the rule.

3.   **Landlord and Tenant.**—When the relation of landlord and tenant is once established it attaches to all who may succeed the tenant immediately or remotely.

4.   **Trusts—Limitation.**—A purchaser of land who received a deed which recited that the consideration was evidenced by an unpaid note, appropriated trust funds in his hands belonging to a married daughter and her minor sisters to its payment on its maturity. Up to the period of the purchaser's death he declared that the land belonged to the children. *Held:*

1.   That the children were subrogated to the lien rights of the vendor.

2.   That no homestead right existed in his wife as against the rights of the children.

3.   That the purchaser could convey to the children the land in satisfaction of the lien.

4.   The purchaser having declared that he held under the children, no limitation could run in his favor against them.

5.   **Evidence.**—One having no interest in common with parties calling him as a witness, and who though nominally a party to the suit has no interest in the result, is competent to testify as to statements and admissions against his interest at the time they were made by a deceased person in possession of property in litigation against those holding under him as heirs, legatees, etc.

APPEAL from Guadalupe. Tried below before Hon. Geo. McCormick. The opinion states the case.

*W. E. Goodrich,* for appellants.—1.   Declarations, admissions, etc., against his interest of one in whom the legal title is or was, are admissible against him or those holding under him by inheritance.

2.   A proposed witness having no interest in common with the parties calling him, but whose interest, if any, must be adverse, is a competent witness to testify as to statements and admissions against interest of a deceased person in possession of property in litigation, against those holding under him as heirs, legatees, etc.   Rev. Stats., art. 2248.

3.   The court erred in its charge to the effect that the jury should find for defendants on their plea of limitations against Mrs. Oury if they believed that Mrs. Saunders had held adversely at and after her husband's death till suit was filed, provided only they should find that Mrs. Oury was a married woman on March 30, 1870, when Mrs. Oury had been a married woman for nearly seven years, and no limitation could begin to run against a married woman when the adverse holding did not begin before her marriage; and in not charging that if Saunders held the land in trust for the plaintiffs, then that the trust must have been repudiated by him or those holding under him, and notice brought of the repudiation to the knowledge of the equitable owners of the land.   Rev. Stats., art. 3201; Pasch. Dig., arts. 4621, 4624.

4.   One can acquire no homestead right in property held in trust for another as against such other.

No brief on file for appellees.

COLLARD, JUDGE.—L. A. Saunders, a married man and the head of a family, on January 1, 1856, bought the land in controversy at public sale made by J. F. Gordon, executor of the independent will of A. M. Grinage, deceased, a deed being then executed to Saunders reciting that the sale was made for the consideration of $926, to become due in twelve months.

In October of the same year Saunders moved on the premises with his family.   Not having the money to pay for the land when the note for the same became due, and having in his possession in trust for the children of his first wife—Mrs. Gordon (wife of J. F. Gordon), Lena M. Saunders (Mrs. Oury), and Adam Saunders—as their property two negroes, the same were sold by decree for partition, and on February 2, 1859, $933.33, the proceeds of the sale, belonging to plaintiffs Lena and Adam, was applied to the payment of the land note by their father, and the balance due thereon was taken from the share of the proceeds of the sale belonging to Mrs. Gordon, all by agreement with the executor J. F. Gordon, who was the husband of the Mrs. Gordon before named.

The case seems to have been tried upon the idea that such payment in discharge of the vendor's lien note created a resulting trust in favor of the children whose money was so used, and vested in them the title to the

land. This it seems can not be. To constitute a resulting trust the payment must be at the time of the purchase, and not subsequent thereto. 1 Lead. Cases in Eq., 337; 1 Perry on Trusts, sec. 133; Lacy v. Clements, 36 Texas, 661; Long v. Steiger, 8 Texas, 461.

It is the transaction itself that gives rise to the trust. Saunders purchased the land in his own name and for himself, and at the time could not have contemplated the use of his children's property in paying for it. The transaction in which the children's property was used was in paying off the vendor's lien note, not in the purchase of the land three years before. So it is to this transaction we must look to know their rights.

Were these children subrogated to the rights of the creditor, and should they be protected on that ground? It is a general rule that where persons are compelled to pay the debt of another, where they are obligated to pay it as a surety, where a junior mortgagee pays off a prior mortgage, or having an interest in the property discharges an encumbrance, subrogation will follow. Sheld. on Sub., sec. 3.

It is said by the same author that "the doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." Such a payment would extinguish the debt. Sheld. on Sub., secs. 240, 241. But the same authority adds that "one who pays a debt at the instance of the debtor under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may as against the debtor be subrogated to the benefit of such security and of the debt which he has discharged. A party who has paid the debt at the request of the debtor, and under circumstances which would operate a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by his payment, may also be subrogated to the security as against the debtor." Id., 247; 2 Lead. Cases in Eq., 287.

At the time Saunders paid the note Mrs. Gordon was a married woman 19 years old, Lena M. Saunders was 17 years old and unmarried, and Adam Saunders about 15 years old. Neither of them was consulted about the application of their money to the payment of the note. It was done by their father, with the concurrence of Gordon, who accepted the payment. Saunders always up to his death declared he was not claiming the land as his own, but for plaintiffs. The note was taken up with the proceeds of the sale of the negroes—by his consent, of course, because he caused it to be done—and it was done under such circumstances as would amount to a fraud upon plaintiffs if they should not be subrogated as against him to the creditor's right of lien on the land.

Plaintiffs were not volunteers in the payment of the note. It was paid

under such circumstances as would lead to the belief that it was the intention of Saunders at the time to fully protect them.    It would be a fraud against them if an obligation could not be implied on his part to subrogate them at least to the debt and lien.    His acknowledgment of his obligation to them is forcibly expressed by the deed he made to them in discharge of the same, made one year and ten months after the transaction; and this was done after he had procured a deed for a nominal consideration from the Grinage heirs.    He entered upon the land encumbered with the vendor's lien given the executor Gordon, to which his children were subrogated.    The whole of the land was subject to the lien in their hands. If the Grinage heirs had any interest in the land it is not shown that he was ignorant of it; and in addition to this he bought from the executor such title as he could give and took the risk of such outstanding title as might exist for one undivided half of the land.    There is no pretense of any fraud, mistake, or misrepresentation.    Edmondson v. Hart, 9 Texas, 554; Walton v. Reager, 20 Texas, 109; Hawpe v. Smith, 25 Texas Supp., 448; Rhode v. Alley, 27 Texas, 442.

If he obtained the title of the Grinage heirs by the deed to him, it appears that he only paid them a nominal consideration, $5; and in such case, if the purchase had been from an individual, he could offset the vendor lien note by the amount, and only the amount, paid to extinguish the outstanding title, and we have seen in this case nothing was paid.    McClelland v. Moore, 48 Texas, 360; Denson v. Love, 58 Texas, 471; Cooper v. Singleton, 19 Texas, 260.

Mrs. Melvina Saunders could not acquire greater rights by these transactions than did her husband; the land was subject to the lien against her as well as against her husband; neither of them could acquire a homestead that could affect the lien for the purchase money.    None of the purchase money had been paid by Saunders; it was still an encumbrance on the land.    Under these circumstances the husband had power to convey to the parties holding the lien the land in satisfaction thereof.    Clements v. Lacy, 51 Texas, 151; Roy v. Clarke, 75 Texas, 28.

In making this conveyance he ignored the amount of the purchase money paid out of the funds of Mrs. Gordon, which was, as we estimate it, only $147.    No one but Mrs. Gordon could complain of this, and she can not and does not complain, because before the amendment of the petition was filed setting up the fact she conveyed all her interest in the land to plaintiffs.    It follows from the foregoing that no homestead rights were ever acquired by Mrs. Saunders.    It was in evidence that L. A. Saunders, after the payment of the note for the purchase money, up to his death or near thereto frequently declared that the land belonged to plaintiffs.    His holding therefore was under their title.

No limitations could run against Mrs. Gordon, as she was a married woman at the time of the payment of the note by Saunders.    Mrs. Oury

(nee Lena M. Saunders) was married long before her father's death; and if it is true that her father acknowledged that his holding was under her and her coplaintiff, the statute would not run against her at all, as she was still a married woman at the institution of the suit.

As to Adam Saunders, if his father claimed to be holding under him and Mrs. Oury, or admitted their title, no limitation would run during his life. Word v. Drouthett, 44 Texas, 370. After his death the widow would be presumed to hold, as did her husband, under plaintiff's title until there was an express disclaimer or an express hostile occupancy brought home to the owners. This may be done it seems "by some open, visible, notorious, exclusive, and adverse act of possession." Word v. Drouthett, 44 Texas, 372.

"When the relation of landlord and tenant is once established it attaches to all who may succeed the tenant, immediately or remotely. * * * And a holding over of forty years, although the original tenant died in possession and was succeeded by his son, the latter of whom paid no rent, was adjudged not adverse to the true owner." Ang. on Lim., sec. 442.

Appellant assigns as error " the refusal of the court to allow Gordon, one of the defendants, a witness for plaintiffs, to detail conversations with L. A. Saunders, under whom defendants claimed, showing that by request of Saunders, who was unable to pay for the land, the proceeds of two negroes, whom he held in trust for plaintiffs Lena and Adam, had been applied to the payment of the purchase money for the land, and that he, Saunders, agreed to hold the land in trust for plaintiffs; he, Gordon, having testified that neither he nor his wife had one cent interest in the result of the suit in common with plaintiffs."

The objection made to the competency of the witness was that he and his wife were parties to the suit, and that though made defendants were really plaintiffs and interested in the suit, and that Gordon was executor of Grinage's will, to whom the note was payable from Saunders for the land, and that the witness could not testify as to any transactions with or statements by deceased.

The witness testified, after the objection was made, that neither he nor his wife had one cent interest in the suit in common with plaintiffs. The court sustained the exceptions. We think the testimony should have been heard. It would not have been contrary to the letter or the spirit of the law. The statute allows a party to testify in such suits when called by the opposite party. Rev. Stats., art. 2248. Gordon and his wife had pending the suit conveyed all interest they had in the land to plaintiffs, which fact was afterwards set up by amendment of the petition, and the witness testified that he and his wife had no interest in the result of the suit. The transfer to plaintiffs was not of such character as would make the witness or his wife liable over to plaintiffs if they lost the suit. We see no reason for holding the witness incompetent. 1 Greenl. Ev., secs. 386, 397, 419.

We do not deem it necessary to discuss other questions raised by the record.

The judgment ought to be reversed and the cause remanded.

*Reversed and remanded.*

Adopted April 13, 1890.