**RAMEY et al. v. CAGE.**
No. 1458.

Court of Civil Appeals of Texas. Eastland.
Dec. 13, 1935.

Rehearing Denied Jan. 24, 1936.

Chandler & Chandler, of Stephenville, and Wilkinson & Wilkinson, of Brownwood, for appellants.

J. B. Keith and A. P. Young, both of Stephenville, for appellee.

FUNDERBURK, Justice.

A tract of 7,250 acres of land in Erath county was subject to a deed of trust lien in favor of Dallas Joint Stock Land Bank of Dallas to secure the sum of $40,000, evidenced by the note or bond of Day Cage. Subsequently a tract of 5,715 acres of the land was conveyed by Day Cage to J. C. Rucker, and by the latter to Brooke S. Ramey, John L. Ramey, Frank B. Ramey, C. Y. Early, and Elizabeth R. Early; a part of the consideration for each conveyance being the assumption by the grantees of $27,500 of the $40,000 obligation. There was an option permitting prepayment of the debt at the end of five years. On October 11, 1930, Day Cage and Brooke S. Ramey, the latter acting for himself and as agent for John L. Ramey, Frank B. Ramey, C. Y. Early, and Elizabeth R. Early, executed a written memorandum reciting their respective interests in the land and obligations to pay the debt, and declared that it was their desire that at the end of the five years, when optional payment was permitted, said loan, either be paid in full, or that, if not paid in full, the same should be divided so that the portion of the loan remaining unpaid at that time and chargeable to Day Cage should be secured only by lands owned by him, and the amount of the loan which had been assumed by said Brooke S. Ramey et al. should be secured only by the lands owned by them. The written memorandum was contractual, at least in form; the ob-

ligation being expressed thus.: "That on May 15, 1933, or before if practical, the parties herein named and at interest will undertake, in all good faith, to segregate the unpaid portion of said above described loan as to liability and security so that Day Cage shall be liable only for the portion properly chargeable to him and secured only by his own property, and the portion so assumed by said Brooke S. Ramey and others shall be secured only by property belonging to them. It is further stipulated and agreed that said Brooke S. Ramey and those whose agent he is herein shall be fully subrogated to all the rights, warranties and guaranties set out in a certain contract between Day Cage and John M. Cage with J. C. Rucker dated April 5, 1930, and recorded in Vol. 223, p. 96 of the deed records of Erath County, Texas. It is agreed and understood that this instrument shall not in any manner alter or change the status of the deed or contract herein referred to and in case of any conflict between same and said original documents it is agreed that the former shall prevail, or take precedent (precedence ?) over this instrument as to construction and meaning."

The obligation just quoted was followed by a recitation as follows: "This instrument is being executed for the express purpose of a simple statement of intention to separate the lien, if possible, on the Rucker and Cage properties as indicated in the deed and contract referred to, and it is not the intention of filing same for record, therefore, it is further agreed and understood that this instrument shall become null and void if placed for record for any purpose as to its effects or reflection on the titles to the respective properties of the said J. C. Rucker and Day Cage."

Subsequently, and about October 6, 1932, Day Cage paid to the Dallas Joint Stock Land Bank $6,861.45, and thereby procured a release of the deed of trust lien in so far only as the same covered the 1,535 acres owned by him. This payment included $1,206.24 more than he was due to pay of the entire debt under the terms of the agreement by which, first, Rucker, and then Brooke S. Ramey et al. assumed payment of $27,500 of the debt.

This suit was brought by Day Cage against said Brooke S. Ramey et al. to recover $1,206.24 and to establish and foreclose a lien upon the land owned by the defendants upon the theory that by such payment and agreement to reimburse him the plaintiff became subrogated to a like proportion of the lien held by the Dallas Joint Stock Land Bank.

The defendants filed a plea of privilege which was duly controverted. By the controverting plea, venue was sought to be maintained in Erath county under R.S.1925, art. 1995, subd. 12, which provides that "A suit for the foreclosure of a mortgage or other lien may be brought in the county where the property or any part thereof subject to such lien is situated." The plea of privilege was tried with the case on its merits. No issue was submitted to the jury concerning the plea of privilege, and on the merits the jury returned a verdict in favor of the plaintiff upon the basis of which the court adjudged that the plaintiff recover of the defendants the sum of $1,206.24 and declared and ordered a foreclosure of the lien claimed. From this judgment the defendants have appealed. The parties will be referred to as plaintiff and defendants, the same as in the trial court.

Defendants urge that the court erred in overruling a number of special exceptions to the plaintiff's controverting plea to the plea of privilege. We are inclined to think that these exceptions should have been sustained, but deem it unnecessary to determine definitely these questions in view of our conclusion as to the disposition which, under the undisputed evidence, should in our opinion have been made of the plea of privilege. If it be granted that the controverting plea alleged facts to show that the suit was one "for the foreclosure of a mortgage or other lien" and therefore one which could be "brought in the county where the property or any part thereof subject to such lien is situated," we think the evidence did not support the plea.

■ There are two kinds or classes of subrogation, legal and conventional; "legal subrogation being for the purpose of this distinction regarded as subrogation which arises by operation of law, and conventional subrogation that which arises by contract." 60 C.J. 695, § 1; Aaron Frank Clothing Co. v. Deegan (Tex.Civ.App.) 204 S.W. 471; International & G. N. R. Co. v. Concrete Inv. Co. (Tex.Civ.App.) 201 S. W. 718; Id. (Tex.Com.App.) 263 S.W. 265. The controverting plea to the plea of privilege does not show clearly by its averments which of these two kinds or classes of subrogation was claimed to have resulted. There was, we think, a want of essential evidence to show either.

■ It will permit of a better understanding of the deficiencies in the evidence to consider first some applicable rules or principles of law. One voluntarily advancing money to discharge a debt secured by liens without any understanding that he shall have a lien to secure a reimbursement is not entitled to subrogation. Hatton v. Bodan Lumber Co., 57 Tex.Civ.App. 478, 123 S.W. 163; Davidson v. Bodan Lumber Co. (Tex. Civ.App.) 143 S.W. 700; Oury v. Saunders, 77 Tex. 278, 13 S.W. 1030, 1031; Fievel v. Zuber, 67 Tex. 275, 3 S.W. 273. This rule, of course, has application exclusively to conventional subrogation. It would no doubt be more accurate to substitute for "without any understanding" the words "without any agreement." So stated, the "agreement" would include express or implied agreements; the latter probably being what is meant by the use of the word "understanding." In Oury v. Saunders, supra, it·is said: "One who pays a debt at the instance of the debtor, under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may, as against the debtor, be subrogated to the benefit of such security, and of the debt which he has discharged." In that language we understand the court to hold, in effect, that the agreement essential to any conventional subrogation that the payor shall have the benefit of the security need not be express, but, where the circumstances warrant, may be implied. The same thought is even more clearly expressed in Fievel v. Zuber, 67 Tex. 275, 3 S.W. 273, 276, as follows: "If, therefore, when Brown paid the note ʼto Ball, Hutchings & Co., there was an express agreement between him and Lawson that his firm should hold the note until the money was repaid, or if the payment was made under circumstances from which such an understanding might reasonably be implied, then Brown, or the firm of which he was a member, became substituted to the rights of the holder of the note at the time of payment." See, also, 25 R.C.L. p. 1317, § 5.

■ Now, as relating to legal subrogation, one statement of a rule applicable is that "it is only in cases where the person advancing money to pay the debt of a third person stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect." 25 R.C.L. 1317, § 5, note 16. The same rule is stated by Corpus Juris thus: "It depends on a relationship of principal and surety, or of primary and secondary liability, or a situation in which one person is compelled, even though only for his own protection and without obligation to another, to pay some other person's debt." 60 C.J. 712, § 24. To either of said statements, if not already included, should, we think, be added the following from Oury v. Saunders, supra: "A party who has paid the debt at the requeŝt of the debtor, and under circumstances which would operate a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by his payment, may also be subrogated to the security as against that debtor."

Looking now to the evidence, it quite clearly appears there was no evidence of an express agreement to the effect that, if plaintiff would make the advance payment for defendants of the $1,206.24 (or any sum not exceeding $1,500), plaintiff was to have the lien as security for reimbursement. Although, perhaps not so obvious, it is none the less certain, we think, that there was no evidence of circumstances implying such agreement. The agreement alleged and supported by the testimony was that plaintiff paid the $1,206.24 at the request, or at least by authority, of the defendants. From that the promise of repayment or reimbursement might be implied, but it does not follow that there would also be implied from such circumstances alone that plaintiff was to have a lien to secure such reimbursement. So far as there was any evidence to show the contrary, plaintiff may have relied exclusively upon the financial respŏnsibility of the deʼfendants without reference to any security. In that case, unless there was a legal subrogation, there was no evidence of any agreement, either express or implied, that plaintiff should have a lien. Plaintiff's position would be the same as that of Brown's in Fievel v. Zuber, supra: "If, on the other hand, when Brown paid the note he did it merely as an advance upon Lawson's individual credit, and relied solely upon Lawson's promise to pay it back, then the mortgage debt was extinguished."

■ Plaintiff, it must be remembered, had the burden of proof. As a matter of law, that burden was not discharged, where the evidence was just as consistent with exclusive credit having been given to the defendants as that there was to be a subroga-

tion to the lien in part discharge of which the payment was made. Kansas City Southern R. Co. v. Carter (Tex.Civ.App.) 166 S.W. 115, 117. In other words, there was no evidence of facts or circumstances from which an agreement, not expressed, could be implied that plaintiff was to have a lien as security for his reimbursement. Hence we conclude that essential evidence was lacking to raise an issue of conventional subrogation.

■ Was there any evidence of a legal subrogation? The effect of the assumption of liability by the defendants to pay $27,500 of plaintiff's debt was, as between the parties, to make the plaintiff surety for the defendants. If there was evidence to show, or to warrant the presumption, that the payment was made by plaintiff to protect himself as such surety, there would be shown a legal subrogation. But there was no evidence of a threatened foreclosure. There was no evidence that the $1,206.24 was due or about to become due. The evidence very clearly shows that the primary purpose of plaintiff's prepayment was to secure a release of his own land from the lien which thereafter continued upon the lands of the defendants. It is of no controlling importance, we think, that this may have been desirable or even to the advantage of the defendants. One of the qualifications to the rule above quoted from Corpus Juris is that "Claimant must establish * * * that the person against whom he claims the right could have been compelled by the principal creditor to pay the debt paid by claimant." 60 C.J. p. 712, § 24. As we recall the evidence, it shows that the Dallas Joint Stock Land Bank could not have collected the $1,206.24 or any part thereof from the defendants at the time plaintiff made the payment. There was no evidence that plaintiff made the payment for the purpose of protecting himself against the lien or that there existed any facts or circumstances making it inequitable that he be denied subrogation. What inequity could plaintiff suffer, if, as may well be the case, so far as any evidence tends to show, the defendants are financially responsible and sole reliance was had upon such responsibility?

■ We deem it appropriate to discuss another rule or principle as follows: "The general rule is that a person is not entitled to be subrogated to the rights or securities of a creditor until the claim of the creditor against the debtor has been paid in full." Note, 9 A.L.R. 1596; Cason v. Connor, 83

Tex. 26, 18 S.W. 668; Slaughter v. Boyce (Tex.Civ.App.) 170 S.W. 259; Foos Gas Engine Co. v. Fairview L. & C. Co. (Tex. Civ.App.) 185 S.W. 382; Beville v. Boyd, 16 Tex.Civ.App. 491, 41 S.W. 670, 42 S.W. 318; Askey v. Stroud (Tex.Civ.App.) 240 S.W. 339; Ellis v. Arnold (Tex.Civ.App.) 258 S.W. 570; Fievel v. Zuber, supra. The undisputed evidence shows that, after the payment in question was made, there remained a large sum still due upon the original debt which remained secured by the lien of the Dallas Joint Stock Land Bank. The defendants insist that the law as thus declared precludes any subrogation under all the evidence in the case. We are not quite clear that this general rule would control. Sullivan v. Doyle, 108 Tex. 368, 194 S.W. 136, may, we think, be regarded as authority for the proposition that, conceding the general rule, yet, as against the debtor, a third party paying a part of the debt with an agreement for subrogation may have his subrogation, but subordinate to the rights of the creditor. This it will be observed has reference to a conventional subrogation. We think we are not required here to determine if such exception to the general rule would also apply to support a legal subrogation, all other essential facts being present.

The discussion thus far has proceeded upon the assumption that it was necessary upon the trial of the issues presented by the plea of privilege and controverting plea that the plaintiff prove that he was subrogated to a part of the lien of the Dallas Joint Stock Land Bank, or, in other words, that the land upon which the lien was claimed was subject to the lien, as well as located in Erath county.

Until recently, the members of this court as formerly constituted were not in agreement as to what must be proved in order to maintain venue under this and certain other exceptions set out in R.S.1925, art. 1995 (as amended [Vernon's Ann.Civ.St. art. 1995]). See Compton v. Elliott (Tex.Civ. App.) 55 S.W.(2d) 247. In answer to certified questions in the last-named case, so we are advised unofficially, but reliably, the Supreme Court has held: "(1) The venue facts which a plaintiff, desiring to sue a defendant outside the county of defendant's domicile, must allege and prove, if the defendant asserts his privilege, are those which are stated in the particular exception in article 1995 that is applicable or appropriate to the character of suit alleged in plaintiff's petition. (2) The venue facts

which a plaintiff is required to plead and prove under exception 9 are that the crime, offense, or trespass was in fact committed and that it was committed in the county where the suit is pending. (3) On the hearing of the plea of privilege, the issue made is tried in the ordinary way and the truth as to the fact or facts in issue is ascertained by the introduction and weighing of evidence offered by both parties. (4) On appeal from a judgment sustaining or overruling a plea of privilege, the power of the Court of Civil Appeals in reviewing the fact findings made by the trial court is the same as it is in any other appealed case." Compton v. Elliott (Tex.Com.App.) 88 S. W.(2d) 91, 95. According to the record presented to the Supreme Court in connection with the questions certified, a transaction claimed to constitute a crime was shown by the uncontroverted evidence to have occurred in Stephens County. The evidence was conflicting as to the existence of some one or more elements of the alleged crime. The trial court having determined that no crime was shown sustained the plea of privilege and transferred the case to Shackelford county. That action has been held by the Supreme Court to have been correct.

The inquiry arises as to what evidence under the Supreme Court's said opinion would be required in the instant case, or, in other words, what are the "venue facts"? The conclusion seems inescapable that plaintiff would be required to plead and prove the facts to show that he had by subrogation become entitled to a lien upon land and that the land was located in Erath county. That the necessary proof would include evidence to show the fact of the existence of the lien, under this exception to the rule of exclusive venue, was the view of the majority of this court in Sims v. Callihan (Tex.Civ.App.) 40 S.W.(2d) 869. The writer expressed a different view in (Tex.Civ.App.) 39 S.W.(2d) 153, and now concedes that under the said recent opinion of the Supreme Court the majority view was correct.

Had the evidence raised an issue of fact as to plaintiff's right to a lien, we are inclined to think, as contended by the defendants, that the failure of the court to submit such issue to the jury and the failure of the plaintiff to request its submission would constitute a waiver of the issue. But if, as we have concluded, there was no evidence raising an issue to be submitted, it was the duty of the trial court to sustain the plea of privilege. The failure to do that being assigned as error, we think the assignment must be sustained.

In view of this conclusion, no other question presented need be discussed. The determination of the question regarding the plea of privilege renders moot upon this appeal all other questions which arose in the trial of the case upon its merits.

It is therefore our opinion that the judgment of the court below should be reversed, and that the cause be transferred to the district court of Brown county, which is accordingly so ordered.