## HAGAN v. ACME DRILLING & SERVICE CO.

### No. 2749.

Court of Civil Appeals of Texas. Eastland.
Dec. 2, 1949.

Rehearing Denied Jan. 6, 1950.

Kelley, Looney, McLean & Enochs, Edinburg, for appellant.

Mark Callaway, Comanche, for appellee.

LONG, Justice.

Acme Drilling & Service Company instituted this suit against C. O. Hagan, W. U. Paul, A. K. Polis and W. L. Douthit for debt and foreclosure of an asserted original Contractor's, Materialmen's and Laborer's Lien on an oil and gas lease owned by Hagan in Comanche County. Each defendant, other than Douthit, filed a plea of privilege to be sued in the county of his residence. Plaintiff controverted such pleas on the theory that the case falls within Exception 12, Article 1995, of the Venue Statute. The trial court sustained the pleas of privilege of Polis and Paul but overruled the plea of privilege of the defendant Hagan. From the order overruling his plea of privilege, Hagan has appealed.

Exception 12, Article 1995, provides that a suit for the foreclosure of a lien may be brought in the county where the property "subject to such lien" is situated. To defeat the plea of privilege filed by Hagan, it was necessary that the plaintiff allege and prove that it had a valid lien on property situated in Comanche County. Ramey v. Cage, Tex.Civ.App., 90 S.W.2d 626; Sims v. Callihan, Tex.Civ.App., 40 S. W.2d 869; Ruwaldt v. Mohawk Drilling Co., Tex.Civ.App., 195 S.W.2d 855.

Plaintiff alleges that on or about February 1, 1944, plaintiff made and entered into a contract with defendants to drill a well for oil and gas for defendants on a certain tract of land in Comanche County, Texas; that acting under said contract plaintiff moved on to said land and drilled a well thereon to the depth of 2,890 feet, when drilling was stopped at the direction of defendants; that there was due and owing the plaintiff for drilling and shutdown time the sum of $15,560.00; that plaintiff duly fixed his laborers' and materialmen's lien on the oil and gas leasehold interest involved herein by filing an affidavit, together with a copy of an alleged written contract and causing the same to be recorded in the Lien Records of Comanche County.

In February, 1948, defendant W. L. Douthit was the owner of the oil and gas

lease involved here. Defendants Douthit and Paul met with Mr. Rupe, a representative of plaintiff, at a lawyer's office in the town of Artesia, and there was prepared a written contract for the drilling of a well on the lease then owned by Douthit. The contract was between The Acme Drilling & Service Company, a corporation, party of the first part, and A. K. Polis, party of the second part, by W. U. Paul, his attorney in fact. The contract was not executed at that time. Mr. Rupe testified that Paul told him that he had rather for Polis to sign it. He said he would take it to Polis and have it signed and then mail the contract back to him. Thereafter, on about the 15th of February, 1948, plaintiff began the drilling of a well on the lease. The well was drilled to the approximate depth of 2,890 feet, when the contract was terminated and the plaintiff removed its rig from the lease.

On the 27th of August, 1948, plaintiff filed, in the office of the County Clerk of Comanche County, an affidavit attempting to fix a lien upon the lease, said affidavit being as follows:

"The State of Texas }
County of Comanche }

"Statement of account under contract by and between Acme Drilling and Service Company of Oklahoma City, Oklahoma and W. U. Paul of Harris County, Texas, a carbon copy of which contract is hereto attached and made a part hereof. By way of explanation, the contract was drawn, the original and two carbon copies, of which the attached is a photostatic copy, the original was duly executed, but is in the hands of W. U. Paul and associates and is not available for filing.

"The amount due on this contract being as follows:
To 2,890 feet drilled at $4,000 per foot ................ $10,560.00
To actual expenses incurred during waiting period of seventy days amounting to    7,000.00
(A part of the contract was that the contractor in drilling provides for actual expenses during such time as the operation was shut down without their fault.)

Total .............. $17,560.00
"By cash received in March....    2,000.00

Balance Due ....... $15,560.00
"The contractor under agreement with the leaseholder moved away from the well April 30, 1948, at which time the total amount above stated came due. The well is on lease shown in Book 238, pages 125 and 131, Deed Records of Comanche County."

Attached to such affidavit and filed therewith was a photostatic copy of the contract drawn in Artesia but not executed by the parties. Plaintiff relies upon this contract, filed in the office of the County Clerk to fix its lien upon the property. Article 5473 of our Revised Civil Statutes, Vernon's Ann.Civ.St. art. 5473, provides that a materialman who furnishes the owner of a mineral leasehold estate with machinery or supplies used in drilling an oil and gas well, shall have a lien on such well, the leasehold estate, the building and appurtenances and upon the material so furnished. Article 5476 provides that such lien shall be fixed and enforced in the manner provided for in Articles 5452 and 5472 inclusive. Article 5453 provides that such lien may be fixed and secured by an original contractor by the filing of his contract within four months in the office of the Clerk of the County where the property is situated, to be recorded in a book kept by the County Clerk for that purpose.

It is our opinion that the instrument filed by the plaintiff was not a written contract. We quote the following from the testimony of Mr. Rupe, the man in charge of the drilling operations for the plaintiff:

"Q. Now, Mr. Rupe, going back to that contract again. What was the agreed contract price for drilling this well, what did you agree to do that drilling for?

"Mr. Looney: Your Honor, we object, the contract would be the best evidence.

"The Court: Yes, if there is a contract that would be the best evidence.

"Q. I believe he never got a contract—did you get the contract signed? A. The original I do not have, all I have is a copy. He kept that, telling me they would mail it.

"Q. You never had a written contract signed by them at all? A. No, sir, kept saying going to send it.

"Mr. Looney: In answering I would appreciate it if you would state who was going to send it back, when you say 'they.' A. W. U. Paul personally, he represented Polis and Paul.

"Mr. Looney: Of course our objection goes to that statement.

"The Court: Yes.

"Q. Then as a matter of fact you never got the contract you, Douthit and Paul agreed on in Artesia, New Mexico verbally, you never got that signed by anybody? A. No, sir, all I got was payment on the contract.

"Q. You never got a written contract signed by those fellows? A. No, sir.

"Q. Did they ever tell you, Mr. Paul or Douthit, that they had that contract? A. Said it was in the mail, signed and in the mail.

"Q. But it never got to you? A. That is right.

"Q. Did Paul tell you that more than once? A. More than once, that is right.

"Q. But it never got to you? A. No, sir."

It will thus be seen that the copy of the contract filed in the office of the County Clerk was never signed by any of the parties. Furthermore, the defendant Douthit who was the owner of the oil and gas lease at the time the contract was drawn, was not mentioned therein. It was between plaintiff and the defendant Polis acting by his attorney in fact, Paul. The record discloses that within a few days after the well was begun on the lease, Douthit assigned the lease to Hagan and he was the owner thereof thereafter.

Although the evidence might be sufficient to sustain a finding that Douthit was a party to the verbal agreement entered into by the parties in Artesia, it fails to show that he signed the written contract or that it

was ever contemplated between the parties that he was to sign it. Hagan was not known in the deal at the time the negotiations were begun and at the time the well was started on the lease. In fact, Mr. Rupe testified that he did not know Hagan and that he never saw him. He did testify that Paul delivered a check to him signed by Hagan payable to Paul for $2,000.00 upon which was written "advance on drilling contract." There are no pleadings in the record of partnership between the defendants or that they were engaged in a joint adventure. The pleading alleges that the plaintiff "entered into a contract with the defendants for the drilling of the well." There must have been a written contractual relationship existing between Douthit (the owner of the lease at the time of the alleged contract) and plaintiff before a lien can be fixed upon the lease by the filing of a contract. There was no such written contractual relationship existing in this case. Lewis et al. v. Phillips, et al., 131 Tex. 313, 114 S.W.2d 864.

It is the contention of appellant Hagan that the affidavit and contract relied upon by the plaintiff was not filed within the time required by law. Article 5453 of the Revised Civil Statutes, Vernon's Ann.Civ. St. art. 5453, provides that every original contractor, within four months after his indebtedness accrues, shall file his contract in the office of the County Clerk where the property is situated. Plaintiff began the drilling of a well in February, 1948, and drilled it down to a depth of 1600 or 1700 feet. The well was then shut down for 10 or 12 days and then drilling was resumed for some 10 or 12 days more and was then shut down and drilling was not thereafter resumed. Mr. Charles Rupe, Vice President of the Drilling Company, in charge of the drilling operations, testified that he was given orders by the defendant Paul to tear down the rig on April 24, 1948. There is testimony that the contract was terminated prior to that date, but viewing the testimony in its most favorable light to the appellant, it is our opinion that it is conclusively established that the contract was terminated more than four months prior to the time appellant filed its affidavit and

contract in an attempt to fix its lien upon the lease. The affidavit and copy of the contract were filed in the office of the County Clerk of Comanche County on August 27, 1948. At the time the defendant Paul instructed Mr. Rupe, the representative of the company, to tear down the rig, the contract was terminated, therefore, the debt due plaintiff became due and payable and it was necessary for plaintiff to file its affidavit in the office of the County Clerk within four months from that date. This was not done. Ruwaldt v. Mohawk Drilling Company, supra.

For the reasons stated, we hold that plaintiff had no valid lien on the oil and gas lease situated in Comanche County and that, therefore, the court erred in overruling the plea of privilege of the defendant Hagan.

The judgment of the trial court is reversed and the cause is remanded.