COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.  2-06-288-CV

 

 

JENNIFER HULEN AND JAMES HULEN                                   APPELLANTS

 

                                                   V.

 

JOE HAMILTON                                                                     APPELLEE

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                      MEMORANDUM
OPINION[1]

 

                                                        ------------

I.                   
Introduction








This suit involves the doctrine of equitable
subrogation.  Appellee Joe Hamilton paid
off the $80,000 purchase money lien on the home of his ill friend Donna Hulen,
with whom he had a long-term close relationship.  Donna died on April 6, 2003, leaving a will
that devised all of her property, including her home, to her two adult
children, Appellants Jennifer and James Hulen. 
Joe filed this suit, seeking a declaratory
judgment that he was entitled to be equitably subrogated to the prior
lien.  After a bench trial, the trial
court granted Joe an equitable lien on the property.  Jennifer and James appeal.  We affirm.

II.                
Factual and
Procedural Background

In 1996, Donna purchased the home that is the
subject of this litigation for $87,000. 
At the time of the purchase, Donna signed a promissory note made payable
to the Colson Mortgage Company, as well as a deed of trust securing the
loan.  Colson assigned the note and deed
of trust to First Nationwide Mortgage Corporation.  Four years later, Donna became ill from
diabetes and lost her job.  She applied
for and received disability benefits but was unable to make the mortgage
payments on the house.  Joe paid off the
mortgage in 2001, writing a check to First Nationwide for $80,000.  Joe also paid property taxes assessed against
the property in 2001 and 2002.     

Joe testified that, on the night of Donna=s death in 2003, James acknowledged to
him, in Jennifer=s
presence, that Ahe knew
[Joe] had paid for the house@
and that, therefore, Athe
house was [Joe=s].@ 
Jennifer sat in silence during this discussion and did not express any
disagreement with James=s
assertion.  Joe testified that, at that
time, he proposed the options to Jennifer of either retaining the home and
repaying him the $80,000 in interest-free installments or selling the home and
reimbursing him out of the proceeds of the sale.  According to Joe, Jennifer agreed to his
proposal but did not specify which of the two repayment options she would
pursue.  Jennifer and James denied making
any agreement with Joe. 








Joe testified that shortly thereafter, Jennifer
refused to have any further communication with Joe or repay him any of the
money that he had paid on Donna=s
behalf.  Instead, one month after Donna=s death, Jennifer moved into the house
and began claiming it as her homestead. 
Joe sued Jennifer and James, seeking a declaration that, as a result of
having paid off Donna=s
mortgage, he was equitably subrogated to First Nationwide=s deed of trust lien against the
property to prevent unjust enrichment. 
The parties tried the case to the bench, and the trial court ultimately
rendered judgment in favor of Joe and awarded him $6,000 in attorney=s fees. 
 

The trial court 
made findings of fact and conclusions of law.  In particular, the trial court found as a
fact that AJoe
Hamilton was not a mere stranger voluntarily paying off the mortgage to the
Property.@  Among the trial court=s
conclusions of law are the conclusions that Joe is entitled to equitable
subrogation to the rights of First Nationwide to prevent unjust enrichment,
that he is entitled to a declaration that he has an $80,000 lien on the
property, that substantial equities favor the granting of equitable subrogation
in favor of Joe, and that Joe is entitled to $6,000 in attorney=s fees under the Declaratory Judgments
Act.  Jennifer and James appealed and
filed separate briefs under the same appeal number.

III.              
Standard of
Review








Findings of fact entered in a case tried to the
court have the same force and dignity as a jury=s
answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s
findings.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).

A legal sufficiency challenge may only be
sustained when:  (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence establishes conclusively the
opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999); Robert W. Calvert, ANo
Evidence@ and AInsufficient Evidence@ Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could, and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).








An assertion that the evidence is factually
insufficient to support a fact finding means that the evidence supporting the
finding is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406‑07 (Tex.), cert.
denied, 525 U.S. 1017 (1998).

Conclusions of law may not be challenged for factual
sufficiency, but they may be reviewed to determine their correctness based upon
the facts.  Citizens Nat=l Bank v. City of
Rhome, 201 S.W.3d 254, 256 (Tex. App.CFort Worth 2006,
no pet.); Dominey v. Unknown Heirs and Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005,
no pet.).

IV.             
Discussion

In five issues, Jennifer argues (1) that the
evidence is legally and factually insufficient to support the elements for
imposition of a lien under the doctrine of equitable subrogation; (2) that the
lien imposed by the trial court on Jennifer=s
homestead violates the statute of frauds; (3) that the lien violates the
homestead protections provided by the Texas constitution and statutory law; (4)
that the trial court erred by awarding attorney=s
fees under the Declaratory Judgments Act because the Act does not apply to this
dispute; and (5) that the trial court=s
award of attorney=s fees
was inequitable and unjust.  In four
issues, James argues (1) that the evidence does not support the trial court=s finding of an agreement between the
parties; (2) that the trial court erred by finding that Joe is entitled to
equitable subrogation; (3) that the trial court erred by awarding attorney=s fees to Joe; and (4) that the trial
court erred by implying the existence of an agreement between Joe and James.

 








A.                
Preservation of
Error

Jennifer=s
first issue and James=s
second issue both challenge the trial court=s
conclusion that Joe is entitled to an equitable lien on the property.  Specifically, both Jennifer and James argue
that there is no evidence to support the trial court=s
finding that Joe Awas not a
mere stranger voluntarily paying off the mortgage to the Property@ and that because he was a volunteer,
he is not entitled to equitable subrogation.

Before we reach the merits of Jennifer=s first and James=s second issues, we must determine
whether they have adequately preserved error for our review.  Joe argues that Jennifer=s and James=s
briefs fail to specifically attack any of the trial court=s findings of fact.  Thus, Joe contends, the trial court=s unchallenged findings of fact are
binding unless the contrary is established as a matter of law or there is no
evidence to support the findings.  See
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Cohen v. Sims,
830 S.W.2d 285, 287‑88 (Tex. App.CHouston
[14th Dist.] 1992, writ denied).








While it is true that Jennifer=s and James=s
respective issues are broad and do not reference with specificity any of the
trial court=s
findings, it is clear from the substance of their briefs that they are
challenging the legal and factual sufficiency of the evidence to support the
trial court=s factual
findings that Joe and Donna agreed that he would be subrogated to the lienor=s rights against the property and that
Joe did not pay the debt voluntarily.  See
Tex. R. App. P. 38.1(e) (stating
that appellate Apoint
will be treated as covering every subsidiary question that is fairly included@); Zagorski v. Zagorski, 116
S.W.3d 309, 315 n. 2 (Tex. App.C
Houston [14th Dist.] 2003, pet. denied) (op. on reh=g)
(rejecting argument that, because her points did not challenge specific
findings of fact or conclusions of law, appellant waived her appellate
argument).  Accordingly, we will examine
the record under the applicable legal and factual sufficiency standards to
determine whether the evidence supports the trial court=s
finding.

B.        Equitable Subrogation and Unjust
Enrichment

 








Under the doctrine of equitable subrogation, a
third party who pays a debt on behalf of the debtor may under certain
circumstances be subrogated to the creditor=s
security interest for the debt that has been discharged.  First Nat=l
Bank of Kerrville v. O=Dell,
856 S.W.2d 410, 415 (Tex. 1993); Smart v. Tower Land & Inv. Co., 597
S.W.2d 333, 337 (Tex. 1980).  The
doctrine allows a person, not acting voluntarily, who pays the debt owed by
another, to seek repayment from the person who in equity and good conscience
should repay it.  Matagorda County v.
Texas Ass=n of
Counties County Gov=t
Risk Mgmt. Pool, 975 S.W.2d 782, 785 (Tex. App.CCorpus
Christi 1998), aff=d,
52 S.W.3d 128 (Tex. 2000).  The courts of
Texas have always been hospitable to the right of equitable subrogation and
have been in the forefront of upholding it. 
Argonaut Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 541-42
(Tex. App.CCorpus
Christi 1993, pet. denied) (quoting McBroom-Bennett Plumbing Inc. v. Villa
France, Inc., 515 S.W.2d 32, 36 (Tex. Civ. App.CDallas
1974, writ ref=d,
n.r.e.).  The purpose of the doctrine is
to prevent the unjust enrichment of the debtor who benefitted from the payment.
First Nat=l Bank of
Kerrville, 856 S.W.2d at 415.  If
entitled to full subrogation, the payor is allowed to enforce the rights
available to the creditor, such as rights against the debt=s security.  Id.

Preliminarily, Jennifer contends that the sole
theory pleaded by Joe was equitable subrogation and that he failed to plead
unjust enrichment as a cause of action. 
However, unjust enrichment, itself, is not an independent cause of
action but rather Acharacterizes
the result of a failure to make restitution of benefits either wrongfully or
passively received under circumstances that give rise to an implied or quasi‑contractual
obligation to repay.@  Friberg-Cooper Water Supply Corp. v.
Elledge, 197 S.W.3d 826, 832 (Tex. App.CFort
Worth 2006) (quoting Walker v. Cotter Props., Inc.,
181 S.W.3d 895, 900 (Tex. App.CDallas 2006, no pet.)), rev=d on other grounds, 240 S.W.3d 869 (Tex.
2007); Mowbray v. Avery, 76 S.W.3d 663, 679 (Tex. App.CCorpus Christi 2002, pet. denied). 









Both James and Jennifer
further contend that there is no evidence of an agreement between Joe and Donna
that would entitle Joe to a claim for equitable subrogation.  However, the doctrine of equitable
subrogation is always given a liberal interpretation and is broad enough to
include every instance in which one person, not acting voluntarily, has paid a
debt for which another was primarily liable and which, in equity and good
conscience, should be paid by the latter. 
Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765,
774 (Tex. 2007); Smart v. Tower Land & Inv. Co., 597 S.W.2d 333, 337
(Tex. 1980) (holding doctrine may be invoked to prevent unjust enrichment Awhen one person confers upon another a benefit that is not required by
legal duty or contract@).  The doctrine applies to disputes in which there
is no actual contract, based on the equitable principle that one who receives
benefits that would be unjust for him to retain ought to make restitution.  Friberg-Cooper, 197 S.W.3d at 832; Frymire
Engineering Co. v. Jomar Int=l, Ltd., 194 S.W.3d 713, 716 (Tex.
App.CDallas 2006, pet. granted); Mowbray, 76 S.W.3d at 679. 

1.                 
The AVolunteer@ Exception

One who pays the debt of another as a mere Astranger@
or Avolunteer@
is not entitled to equitable subrogation. 
First Nat=l
Bank of Kerrville, 856 S.W.2d at 415; Smart, 597 S.W.2d at 337.  Both First Nat=l Bank of Kerville and Smart
cite the 1890 Texas supreme court case Oury v. Saunders for this
proposition.  77 Tex. 278, 280, 13 S.W.
1030, 1031 (1890).  In Oury, the
supreme court adopted the Avolunteer@ exception to recovery for equitable
subrogation as explained by a hornbook:

It
is a general rule that when persons are compelled to pay the debt of another,
where they are obligated to pay it as a surety, when a junior mortgagee pays
off a prior mortgage, or, having an interest in the property, discharges an incumbrance,
subrogation will follow. Sheld. Subr. '
3. It is said by the same author that >the
doctrine of subrogation is not applied for the mere stranger or volunteer who
has paid the debt of another without any assignment or agreement for
subrogation, without being under any legal obligation to make the payment, and
without being compelled to do so for the preservation of any rights or property
of his own.= Such a
payment would extinguish the debt. Id. ''
240, 241.

 








Id.  The hornbook
cited as ASheld.
Subr.@ is Sheldon: The Law of Subrogation (Henry
Newton Sheldon, 1882), long out of print but available as scanned images on the
Google Books web site.[2]

Sheldon recognized a circumstance that would
preclude the Avolunteer@ exception from preventing recovery
that was not implicated by the facts of Oury, Smart, or First
Nat=l Bank of
Kerville, that is, one who lends money to an infant to buy necessaries or
pay debts for necessaries is allowed to hold the infant liable therefor by
subrogation to the rights of the person furnishing the necessaries, even if the
payor is a volunteer and a stranger.  Sheldon: The Law of Subrogation ' 243.

Later developments in the law of subrogation and
unjust enrichment have expanded the situations in which payment for Anecessaries@
will support equitable subrogation even by a volunteer beyond those involving
infants, as recognized by Sheldon.  The
current draft of the Restatement (Third) of Restitution and Unjust Enrichment
states:

(1)
A person who pays another=s
debt for necessaries has a claim in restitution against the other if

 

(a) the circumstances justify the claimant=s decision to intervene without a prior
agreement for reimbursement, and

 

(b) there is no prejudice to the defendant in
substituting a liability in restitution for the original obligation in
contract.

 








Restatement (Third) of
Restitution & Unjust Enrichment ' 22
(Tentative Draft No. 2, 2002).  The
comments to section 22 explain the exception:

A decision to perform the defendant=s duty without prior agreement is
justified only if the claimant is a proper party to intervene.  Traditional judicial rhetoric denounces
unrequested intervention by Avolunteers,@ Astrangers,@ and Aintermeddlers,@ but the content of this limitation . .
. necessarily depends on the circumstances of the intervention. . . .

 

Subsections (1) and (2) refer to obligations
contracted for, and obligations to furnish, Anecessaries.@ 
The term is generally understood to refer to such essentials as food,
clothing, housing, and medical care, but it is capable of more expansive
definition in particular circumstances. . . .

 

. . . .

 

[T]he disinterested payment of another=s debts for necessaries, where the
debtor suffers no prejudice from the substitution of creditors, will support a
claim in restitution in other appropriate circumstances, typically where the
debtor encounters difficulty in managing his or her own affairs. . . . So long
as the debts to third parties are valid and enforceable, there is prima facie
enrichment of the defendant as a result of the payment by the defendant.  

            

Id. cmt. b-c, f (emphasis added).








Texas courts have been liberal in their determinations
that payments were not made voluntarily. 
Argonaut Ins. Co., 869 S.W.2d at 541-42; see, e.g., Hill v.
Watts, 801 S.W.2d 176, 177 (Tex. App.CBeaumont
1990, writ denied) (holding claimant who paid back taxes on property acquired
by fraudulent means not acting as volunteer); Tex. Real Estate Comm. v.
Century 21 Sec. Realty, 598 S.W.2d 920, 922 (Tex. Civ. App.CEl Paso 1980, writ ref=d n.r.e.) (company repaying its
customers who were defrauded by company=s
salesman not a volunteer); Forney v. Jorrie, 511 S.W.2d 379, 386 (Tex.
Civ. App.CSan
Antonio 1974, writ ref=d
n.r.e.) (husband not a Avolunteer@ who paid wife=s
and her ex-husband=s back
taxes to remove a federal tax lien on wife=s  as well as his own bank account).  In Hays v. Spangenberg, a lender under
an unenforceable note and deed of trust executed by a woman who was
incompetent, in order to remove a prior lien on her property, was held not to
be a Avolunteer@ but equitably subrogated to the rights
of the prior lienor where he lent the funds to protect her property and the
money was essential to preservation of her estate.  94 S.W.2d 899, 901 (Tex. Civ. App.CAustin 1936, no writ); see also Breaux v. Allied Bank of Texas, 699 S.W.2d 599, 604
(Tex. App.CHouston
[14th Dist.] 1985, writ ref=d n.r.e. (holding law implies obligation to pay reasonable value for
necessaries furnished to a ward), cert. denied,  479 U.S. 1002 (1986); Ferguson v. Fitze,
173 S.W. 500, 501 (Tex. Civ. App. 1914, writ ref=d) (same as to party under disability).      

2.                 
Application








The facts of this case fall squarely within
Restatement section 22=s
exception to the voluntary-payment rule. 
Joe assisted Donna by paying $80,000 to protect Donna=s home. 
Housing is a necessary.  Joe=s testimony established that Donna was
having difficulty managing her affairsCspecifically,
she could not make her house paymentsCbecause
she was laid off from her job and disabled. 
Joe looked after and took care of Donna after she became ill, including
paying the taxes on the property, paying for the funeral, and paying for
probate of the will.  Donna=s debt to First Nationwide Mortgage was
valid and enforceable, and Donna=s
estate and therefore her devisees, Jennifer and James, benefitted by Joe=s payment of the debt.  There is no evidence that Donna, Jennifer, or
James would suffer any prejudice by substituting Joe for First Nationwide
Mortgage as the creditor.  Thus, even
assuming, as Jennifer and James argue, that Joe is a Avolunteer@ and did not have an agreement with
Donna regarding subrogation, Joe is entitled to equitable subrogation because
the circumstances bring the case within section 22, precluding application of
the Avolunteer@ exception.  

Every case of equitable subrogation is governed by
its own facts.  First Nat=l Bank of Kerrville, 856 S.W.2d at
415. The facts and equities of this case support the trial court=s imposition of a lien in Joe=s favor.  Any other result would be a windfall to and
unjust enrichment on the part of Jennifer and James.  We therefore overrule Jennifer=s first issue and James=s second issue.

B.                
Statute of
frauds

In her second issue, Jennifer argues that,
assuming Donna orally agreed to grant Joe a lien on the property, the oral
agreement would be unenforceable under the statute of frauds; thus, Joe is not
entitled to equitable subrogation.  








Jennifer=s
argument fails because, as we have noted, equitable relief does not require an
enforceable contract.  Equitable
subrogation is not dependent upon contract, but arises by operation of law or
by implication in equity to prevent injustice. 
Harris v. Am. Protection Ins. Co., 158 S.W.3d 614, 622 (Tex. App.CFort Worth 2005, no pet.).  The principle of unjust enrichment suggests
that restitution is an appropriate remedy in circumstances in which the
agreement contemplated is unenforceable, impossible, not fully performed, thwarted
by mutual mistake, or void for other legal reasons.  City of Harker Heights v. Sun Meadows Land,
Ltd., 830 S.W.2d 313, 319 (Tex. App.CAustin
1992, no writ).  Thus, the lack of an
enforceable contract between Joe and Donna is the very basis for Joe=s equitable claim.  We therefore overrule Jennifer=s second issue.

James makes a similar argument in his first and
fourth issues.  He contends that the
trial court erred by finding that an agreement existed between James, Jennifer,
and Joe, and that if such an agreement did exist, the statute of frauds barred
enforcement.  He also argues that if an
agreement existed between Jennifer and Joe regarding reimbursement for Joe=s payment, the trial court erred by
implying a similar agreement between Joe and James.  For the reasons stated above, Joe=s entitlement to equitable relief does
not depend on the existence of an agreement between any of the parties.  Therefore, we overrule James=s first and fourth issues.

C.                
Homestead law

In her third issue, Jennifer contends that the
trial court erred by imposing a lien because the subject property is her
homestead and Texas law forbids imposition of a homestead encumbrance except in
certain conditions, which Jennifer argues are not met here.








The Texas constitution protects a homestead from
forced sale except for the payment of debts for, among other things, purchase
money or the refinance of a lien against the homestead.  Tex.
Const. art. 16, ' 50.   Likewise, the property code allows a
homestead encumbrance for purchase money and the refinance of lien against a
homestead.  Tex. Prop. Code Ann. ' 41.001(b)(1),
(5) (Vernon Supp. 2007).  Jennifer relies
on two cases in which courts have disallowed an equitable lien on a homestead,
but neither of those cases involve a purchase money lien or the refinance of a
lien against a homestead.  See Hruska
v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988) (holding
equitable lien on homestead not available to secure repayment of construction
loan); Republicbank, Lubbock, N.A. v. Daves, 770 F.2d 1363, 1367-68 (5th
Cir. 1985) (holding bank not entitled to equitable lien on homestead to secure
loan for improvements to homestead and office building when bank did not follow
statutory requirements for creating valid lien).

Joe paid off the existing purchase money lien on
the subject property.  We have already
determined that he is entitled to an equitable lien as a result of that
payment.  His payment and the equitable
lien imposed by the trial court equate to the refinance of a lien against the
homestead, which is authorized by both the Texas constitution and the property
code.  AOne
who discharges the vendor=s
lien upon lands Ceven the
homesteadCA is entitled to be subrogated to the
lien of the creditor to the extent of the payment made, to prevent unjust
enrichment.  First Nat=l Bank of Kerrville, 856 S.W.2d at
415 (quoting Faires v. Cockrill, 88 Tex. 428, 31 S.W. 190, 194
(1895)).  We therefore hold that the lien
imposed by the trial court does not violate the Texas homestead protections.

 








D.                
The Declaratory
Judgments Act and Attorney=s Fees

In her fourth issue, Jennifer argues that Joe
filed suit under the Declaratory Judgments Act solely as a means to recover
attorney=s fees
and that declaratory relief is not appropriate. 
In her fifth issue, she argues that the trial court=s award of attorney=s fees under the Declaratory Judgments
Act is inequitable and unjust. Likewise, James in his third issue argues that
the trial court=s award
is inequitable.  Joe replies that
Jennifer and James failed to preserve these issues for appeal by first raising
them in the trial court. 

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling, if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P. 33.1(a); see
also Tex. R. Evid.
103(a)(1).  If a party fails to do this,
error is not preserved, and the complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712
(Tex. 1991) (op. on reh=g). 
The objecting party must get a ruling from the trial court.  This ruling can be either express or
implied.  Frazier v. Yu, 987
S.W.2d 607, 610 (Tex. App.CFort Worth 1999,
pet. denied).  If trial judge refuses to
rule, an objection to the refusal to rule is sufficient to preserve error.  Tex.
R. App. P. 33.1(a)(2).  Legal
sufficiency challenges following a bench trial are an exception to the general
preservation rule; a party may raise such challenges for the first time on
appeal.  Tex. R. App. P. 33.1(d); Tex.
R. Civ. P. 324(a)-(b).








In this case, neither Jennifer nor James challenged the
applicability of the Declaratory Judgments Act or the award of attorney=s fees under the
Act at any stage of the trial court proceedings.  Indeed, in her original answer, Jennifer
asked the trial court to award her attorney=s fees under the
Act.  Likewise, neither Jennifer nor
James challenged the amount of attorney=s fees awarded by
the trial court as inequitable or unjust. 
We therefore hold that Jennifer and James have failed to preserve these
issues for our reviewCwith one exception.

The one exception is Jennifer=s argument that
the evidence is legally insufficient to support the trial court=s award of
attorney=s fees.  She makes this argument in the broader context
of her argument that Joe failed to segregate between the fees attributable to
the declaratory judgment and the fees attributable to his equitable subrogation
claimCan argument she
failed to preserve for our review.  But
because a party may raise a claim for legal insufficiency for the first time on
appeal following a bench trial, we will briefly consider the sufficiency of the
evidence to support the trial court=s award of attorney=s fees.  

Joe=s counsel testified at trial. 
He summarized the work he performed 
preparing the case for trial, the time spent doing the work (thirty
hours), and his hourly rate ($200 per hour), and he testified that his fee was
necessary and reasonable.  Jennifer and James
did not cross examine Joe=s counsel or
offer evidence of their own.  The trial
court awarded Joe $6,000 in attorney=s fees.  We hold that the
evidence was legally sufficient to support the award.








We overrule Jennifer=s fourth and fifth issues and James=s third issue.

V.                
Conclusion

Having overruled all of Jennifer=s and James=s
issues, we affirm the trial court=s
judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:       CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 

CAYCE, C.J. dissents without opinion.

 

DELIVERED:
February 28, 2008











[1]See Tex. R. App. P. 47.4.





[2]http://books.google.com/books?id=oVc9AAAAIAAJ
(last viewed Feb. 27, 2008).